## GRAND RAPIDS FURNITURE CO. et al. v. GRAND RAPIDS FURNITURE CO.

### No. 7839.

Circuit Court of Appeals, Seventh Circuit.

April 16, 1942.

[20] 43 B.T.A. 617, 620.

Ben Meyers, Meyers & Meyers, and Hart E. Baker, all of Chicago, Ill., for appellant.

John J. Yowell, of Chicago, Ill., Stephen F. Dunn, of Grand Rapids, Mich., and Hummer, Van Ness & Yowell, of Chicago, Ill. (Herbert G. Bantz, of Chicago, Ill., of counsel) for appellees.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

In this case twenty-five plaintiffs sued appellant, a corporation, and six individuals alleged to have operated furniture stores in Chicago under various names. They prayed for a preliminary injunction and also a permanent injunction to enjoin the defendants from operating as a corporation under the name "Grand Rapids Furniture Company," or any name using the words "Grand Rapids," and from using in any manner whatever any such name or corporate entity. The complaint was verified, and appellant, the Illinois corporation, filed its motion to strike the complaint on the ground that it failed to state a claim on which relief could be granted. The cause was submitted for hearing on that motion and upon plaintiffs' application for a preliminary injunction. No oral testimony was heard, nor were any affidavits filed in support of the motion.

The court made findings of fact which are mere recitals of allegations found in the verified complaint. They are substantially as follows: Each plaintiff is a citizen of the State of Michigan and each defendant is a citizen and resident of the Northern Federal District of Illinois; the value of the matter in dispute exceeds the sum of $3,000 exclusive of interest and costs.

The Furniture Manufacturers Association of Grand Rapids, Michigan, is an association of furniture manufacturers including the other plaintiffs, and all the other plaintiffs are and for many years have been engaged in the city of Grand Rapids in the business of manufacturing and selling furniture, in which business they have invested several millions of dollars in the erection of plants and in advertising their products throughout the United States.

The city of Grand Rapids is a large and important center of the furniture industry in the United States, which fact is generally known to the public, and furniture manufactured in that city has for many years enjoyed a wide-spread popularity, good will and demand throughout the United States, and the words "Grand Rapids furniture" have acquired in the trade a special significance; and furniture made in that city is held by a large part of the purchasing public to be superior in design, workmanship and value to furniture usually purchased elsewhere, and among the purchasing public many prefer Grand Rapids furniture to that made elsewhere. "Grand Rapids furniture" is, and the public understands it to be, furniture manufactured in the city of Grand Rapids, Michigan. The method of marketing the goods of the individuals and corporations named as plaintiffs (except the trade association) is consistently by sales to consumers through established dealers; and by adherence to this practice of marketing only through dealers and refusing to sell goods direct to customers, the plaintiffs have secured for themselves the confidence and good will of dealers throughout the United States. By reason of these facts plaintiffs have acquired the good will of the furniture purchasing public and furniture dealers for Grand Rapids furniture of the value of many millions of dollars.

Appellant has never had a factory in Grand Rapids, Michigan, but was organized by the individual defendants with the intent and for the purpose of deceiving the public and leading prospective purchasers to believe that the defendants had some connection with a Grand Rapids furniture factory and sold Grand Rapids furniture, and that such purchasers were deriving some benefit by purchasing direct from Grand Rapids, through the defendant company, which company has engaged in selling at retail, cheap, inferior furniture not manufactured in Grand Rapids, and much, if not all, of which is known to the furniture trade by the term of depreciation, "Borax."

The individual defendants have operated furniture stores in Chicago from time to time under various fictitious and corporate names at some fifteen specified locations and under ten specified fictitious or cor-

porate names including "Grand Rapids Upholstery Company." The individual defendants, who are the incorporators of the corporate defendant, are all members of the same family, and could not be located by the Marshal at their usual places of residence in Chicago. Whereupon plaintiffs applied for a temporary restraining order without notice, based upon the Marshal's return that he was unable to find one of the individual defendants at his usual hotel residence, and that he had left his forwarding address which proved to be a vacant store. None of the officers of that corporation could be found at the addresses registered with the Secretary of State. After issuance of the temporary restraining order the defendant corporation appeared by counsel and filed its motion to strike the complaint.

Except when interrupted at various times by various proceedings, including a Federal Trade Commission prosecution, Federal Code Authority hearings and its findings of fraud, a stipulation entered into with the Chicago Better Business Bureau agreeing to cease fraudulent practices, including the practice of claiming to be a branch of or affiliated with the "Grand Rapids Furniture Company," of Grand Rapids, Michigan, and the practice of claiming that the furniture advertised and sold by the defendants was manufactured in Grand Rapids, Michigan, when such was not the fact, and other alleged interruptions, the defendants through the medium of the defendant corporation have falsely represented to the public: That their store was a branch of the "Grand Rapids Furniture Company" of Grand Rapids, Michigan; that their store was a sales outlet for a furniture factory at that city, and that their factory was there; that purchases of furniture from them were purchases of "Grand Rapids furniture" direct from the factory at Grand Rapids; and the defendants have engaged in false, fraudulent and misleading advertising; have deliberately and fraudulently substituted other furniture for the furniture purchased by their customers from them; have engaged in the making of false and fraudulent representations with respect to the quality of the furniture sold by them; and have sold as "Grand Rapids furniture" inferior furniture at prices which gave the purchasers a false idea of the value of genuine "Grand Rapids furniture."

The defendants have formed corporations under the name "Grand Rapids Furniture Company" with the intent to mislead and defraud the public by using the words "Grand Rapids" and the words "Grand Rapids furniture" in their advertising and leading the public to believe through the medium of newspaper and radio advertising, store signs, window displays, and otherwise, that stock in their store was made up of products of the factory located in the city of Grand Rapids, Michigan, and the defendants have engaged in each and all of such practices well knowing of the existence of the plaintiff, "Grand Rapids Furniture Company," and that the name "Grand Rapids" is a common law trade name of great value to the plaintiffs. Defendants have irreparably injured the plaintiffs by profiting from the use of the name "Grand Rapids" in making sales to members of the public and potential customers of one or more of the plaintiffs and by leading a large section of the public to believe that the "Grand Rapids furniture" is a shoddy and inferior product and that those who sell "Grand Rapids furniture" are dishonest. By these practices the defendants have irreparably injured the good will which plaintiffs have established with dealers in Chicago and throughout the country who are and who might become customers of plaintiffs.

From time to time the defendants have closed out their business at a particular location after a going out of business sale, and then opened up at some other location. They are now in the process of one of such transformations, the Chicago newspapers having refused to carry their advertising because of their fraudulent practices, and have held a going out of business sale. However, they have opened up, or are about to open, a furniture store in Los Angeles, California.

Unless the defendants are enjoined they will reopen a furniture business, or furniture businesses, either at some other location or locations in Chicago or elsewhere and will continue their practices as above stated. The plaintiff, Furniture Manufacturers Association of Grand Rapids, will be further damaged by such conduct, and its purposes defeated and its prestige weakened if the products of the Grand Rapids factories are confused with the products of other factories, and the business methods of its members are confused with the business methods of the defendants; the plaintiff,

"Grand Rapids Furniture Company" will be damaged by the use by the defendant of that name, which was adopted by defendants for the purpose of carrying out the fraudulent practice above referred to; and the reputation, popularity and good will of Grand Rapids furniture sold by plaintiffs will be irreparably injured, inasmuch as the plaintiffs have no remedy at law.

Upon these facts the court concluded that it had jurisdiction over the "Grand Rapids Furniture Company" and also of the subject matter, inasmuch as this suit is one of general equity cognizance. The court further concluded that the complaint stated a claim on which relief could be granted and justified the issuance of an interlocutory or preliminary injunction; that unless such injunction was granted the plaintiffs would sustain immediate and irreparable injury and that they had no remedy at law. Hence the court concluded that plaintiffs were entitled to an interlocutory or preliminary injunction as prayed in their verified bill. It accordingly overruled the motion to strike the complaint and issued its order restraining the appellant, its agents, employees and associates from committing the acts complained of until the further order of the court, conditioned upon the filing of a protection bond by plaintiffs in the sum of $2,500, which was immediately filed by plaintiffs, and approved by the presiding judge. From this order the present appeal is prosecuted. None of the individual defendants appeared to or participated in the action, nor does the record disclose that they were ever served with process.

■ Subjoined to the motion to strike the complaint are twenty-four specifications of alleged defective allegations, most of which are without merit, and none of which raise the question of jurisdiction. They deal with alleged conclusions of fact, lack of particularization, alleged fictitious, unscrupulous, scandalous, vague, impertinent and immaterial matter. We think all such allegations, if true, are quite material, and were well pleaded, and the court found them to be true. All the findings were fully supported by the verified allegations of the complaint; and for the purposes of passing on appellant's motion to dismiss the complaint, and appellees' application for a preliminary injunction, those allegations were admitted by appellant to be true by the filing of the motion to dismiss the complaint. Such defects of allegation, or improper

joinder of parties, if any, may readily be disposed of in the District Court, if desired by appellant, at any time prior to or at the final hearing, but none nor all of them constitute sufficient grounds to dismiss the complaint, for it does state a cause of action in equity on the theory of defendant's unfair competition.

■ After notice of appeal by the Grand Rapids Furniture Company, the sole appellant, it for the first time raised the question that the complaint did not affirmatively show that the District Court had jurisdiction under section 24 of the Judicial Code, 28 U.S.C.A. § 41(1). The question is timely raised for our consideration and the burden is upon appellees to show such jurisdiction from the allegations of the complaint and the findings. Both disclose diversity of citizenship and that the value of the matter in dispute exceeds the sum of $3,000 exclusive of interest and costs. 28 U.S.C.A. § 41(1).

However, appellant contends as necessary to jurisdiction of the action that it must be shown that the value of the matter in dispute as to each plaintiff exceeds the sum of $3,000, exclusive of interest and costs, and that it is not sufficient to aggregate the values of the several matters in dispute as represented by the respective plaintiffs in order to obtain the minimum amount required. In support of this thesis it relies upon Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Woodside v. Beckham, 216 U.S. 117, 30 S. Ct. 367, 54 L.Ed. 408; and Hilliker v. Grand Lodge, K.P., 6 Cir., 112 F.2d 382.

■ In the Gray case numerous individuals, copartnerships and corporations joined in bringing a suit to contest the constitutionality of the California Caravan Act, which exacted fees for each automobile driven into that State for sale. Injunctive relief was demanded, and granted by a three-judge court, which found that the amount involved, as alleged in the complaint, exceeded $3,000, exclusive of interest and costs. In that court defendants had filed a motion to dismiss the bill for lack of jurisdiction, but later dismissed the

motion, and did not challenge jurisdiction in the Supreme Court. The latter court, sua sponte, raised the question and reversed, instructing the lower court to dismiss on the merits as to Paul Gray, Inc., and to dismiss as to all other plaintiffs for want of jurisdiction because of lack of the proper amount involved. It held that there was not shown any joint or common interest of the plaintiffs in the subject matter, and cited to that point Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111, which was decided the same day. The Gray case [306 U.S. 583, 59 S.Ct. 748, 83 L.Ed. 1001] referred to the "* * * familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements.* * *" citing among other cases Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817.

Appellant also relies on the Pinel case. There two plaintiffs, not claiming to represent a class, each suing for himself upon a separate and distinct demand, joined in the same complaint, but did not show the requisite jurisdictional amount as to either. The court merely held that jurisdiction was lacking, and of course it was an apt citation to the "familiar rule" referred to in the Gray case.

In the Hague case other points than the one now before us were also in issue, most of which constitute the bases for most of the various opinions there promulgated. However, the question of jurisdiction was raised in the District Court. 25 F.Supp. 127. Plaintiffs claimed jurisdiction on three separate subsections of section 24 of the Judicial Code relating to (1) diversity of citizenship and amount involved, (12) conspiracy, and (14) suit by anyone regardless of the amount involved. The District Court held there was jurisdiction under each subsection. The Circuit Court of Appeals held there was jurisdiction only under subsections (1) and (14). 101 F.2d 774. Three of the members of the Supreme Court held there was jurisdiction only under subsection (14) and two held there was jurisdiction under the privileges and immunities clause of the fourteenth amendment of the Constitution. It should be noted, however, that all of these judges agreed that there was no jurisdiction under

subsection (1), because there was no common interest in the plaintiffs and the record was bare of any showing of the value of the asserted rights of the plaintiffs individually. They cited to this point Pinel v. Pinel, supra, which we have already discussed. The facts in both cases are quite analogous and obviously come within the "familiar rule" referred to in the Gray case.

The McNutt case was not a class suit, nor was it claimed to be. Plaintiff corporation sought to rid itself from governmental regulation under a State statute. It alleged an involved value of more than $3,-000 exclusive of interest and costs. To prove this it relied on the value or net worth of its business. The Court said that neither nor both of these were proper bases, but that the value in controversy was the value of the right to be free from the regulation, and that value was not shown as alleged. Since jurisdiction was denied by the answer, the burden was upon the plaintiff to support its jurisdictional allegations by facts. This it did not do.

KVOS, Inc., v. Associated Press was not a class action. With respect to jurisdictional allegations and proof it was quite like the McNutt case. The motion to dismiss raised the question of jurisdiction. The Supreme Court ruled that no sufficient evidence was offered in support of the verified allegation of the value involved, and directed the District Court to dismiss the complaint for lack of jurisdiction. Neither the case of Woodside v. Beckham, supra, nor Hilliker v. Grand Lodge, supra, adds any legal principle different from those in the cases hereinbefore mentioned.

Our attention has been called to Thomson v. Gaskill, March 2, 1942, 62 S.Ct. 673, 675, 86 L.Ed. ——. The suit was instituted under 28 U.S.C.A. § 41(1) by forty-one conductors and brakemen employed by a certain railroad against that railroad and another one of its employees. The complaint alleged an involved value of $3,000 exclusive of interest and costs, which was denied by answer. The District Court sustained the defendant's motion to dismiss; the Circuit Court of Appeals reversed, 8 Cir., 119 F.2d 105; and the Supreme Court reversed the Court of Appeals. It said that plaintiffs' action was founded upon various agreements which were not in the record, hence there was no basis for determining whether that

suit was one "in which several plaintiffs, having a common undivided interest, unite to enforce a single title or right, and in which it is enough that their interests collectively equal the jurisdictional amount," citing Shields v. Thomas, 17 How. 3, 5, 15 L.Ed. 93; Troy Bank v. Whitehead & Co., 222 U.S. 39, 40, 41, 32 S.Ct. 9, 56 L.Ed. 81; Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 86, 43 S.Ct. 480, 67 L.Ed. 871; and Gibbs v. Buck, 307 U.S. 66, 74, 75, 59 S.Ct. 725, 83 L.Ed. 1111. The cause was remanded to the District Court without prejudice to an application for leave to amend the bill of complaint.

Our attention has also been called to two cases recently decided by this court, Andrews v. Equitable Life Assurance Society, 7 Cir., 124 F.2d 788; and Alderman v. Elgin, J. & E. Railway Co., 7 Cir., 125 F.2d 971. In the Andrews case fifteen plaintiffs filed as many separate suits against as many mutual life insurance companies, each plaintiff claiming to represent all others similarly situated with respect to the defendant. The several plaintiffs sought an accounting and distribution of the proportionate shares of an alleged common interest in undistributed surplus funds held by the respective companies during the plaintiffs' respective memberships. Motions to dismiss were filed by the defendants, and sustained, and each complaint was dismissed for lack of a showing that the required jurisdictional amount was involved, under 28 U.S.C.A. § 41(1). The suits were consolidated for hearing in this court. No plaintiff's claim alone equaled the required jurisdictional amount, and each named plaintiff sought aggregation of the claims he represented for the purpose of making up the amount. This court there held that the rights of each plaintiff and those he represented must stem from their respective policies; that those rights were several, unrelated, and independent; and that their value could not be aggregated for the purpose of conferring jurisdiction. However, the appellant urged that he did not depend upon

his rights under the policy, whereupon this court held that he had no other rights under the circumstances there stated.

In the Alderman case, many plaintiffs joined in one suit, under 28 U.S.C.A. § 41 (1), for breach of contract of employment. The bill disclosed diverse citizenship as to more than one-half of the plaintiffs, but not as to the others. The District Court assumed jurisdiction and entered summary judgment for the defendant. This court reversed for lack of jurisdiction. It noted, sua sponte, that the amount of damages claimed by two plaintiffs, of adverse citizenship to defendant, was three thousand dollars, whereas the amount in controversy was required by statute to be more than three thousand dollars, exclusive of interest and costs. The court held that the suit was not a class action, and, so far as the opinion discloses, the plaintiffs did not claim that it was. The judgment was reversed and the cause remanded with instructions to permit amendments as to jurisdiction, if desired, otherwise to dismiss the bill without prejudice. No such questions are raised in the instant case.

Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 729, 83 L.Ed. 1111, was a class suit by representation under rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.[1] It was decided on the same day as was Clark v. Paul Gray, Inc., supra. The plaintiffs were American Society of Composers, Authors and Publishers, an unincorporated association under the laws of New York; Gene Buck, as its president; various corporations publishing musical compositions; a number of authors and composers of copyrighted music; and several next of kin of deceased composers and authors. The suit was brought on behalf of complainants and others similarly situated, members of the Society, too numerous to make it practicable to join them as plaintiffs in a matter of common and general interest. There was a formal allegation of diversity of citizenship and that the

---

[1] Rule 23. Class Actions.

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character

of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary * * *;

"(2) several * * *; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought." .

matter in controversy exceeded $3,000, exclusive of interest and costs. The appeal was from an order of a three-judge District Court refusing to dismiss the bill of complaint on defendant's motion for failure to set out facts sufficient to show federal or equity jurisdiction, or to constitute a cause of action, and granting an interlocutory injunction against the enforcement of a Florida statute aimed at combinations fixing the price for the privilege of rendering copyrighted musical compositions privately or publicly for profit.

The bill of complaint alleged that users of musical compositions had refused to recognize plaintiffs' rights under the Copyright Act, 17 U.S.C.A. § 1 et seq., and to pay royalties for public performances for profit, and that authors, composers and publishers were unable, individually, to enforce their exclusive right because of the expense of detecting and suing for infringement throughout the United States. The Society was founded in 1914 to license performance of copyrighted music for profit and otherwise to protect the copyrights. Inasmuch as the amount involved was challenged by defendants' motion to dismiss, the burden was thereby cast upon appellees to support their allegation of value by evidence. The record disclosed affidavits then on file in support of appellees' prior motion for a temporary injunction which averred that each publisher had received from the Society, during the year next previous to the enactment, more than $50,000, that its contract with the Society had a value in excess of $200,000, and that to fix prices on each composition for each use in Florida would require an expenditure of more than $25,000. Other of such affidavits of the individuals showed annual incomes to them from the Society of from $3,000 to $9,000, and contracts with the Society of the value of thousands of dollars, and an expense, in one instance as high as $5,000, made necessary in order to comply with the requirements of the Florida Statute. Upon these jurisdictional facts the Supreme Court said: *"In view of the unchallenged facts, federal jurisdiction will be adequately established, if it appears that for any member, who is a party, the matter in controversy is of the value of the jurisdictional amount, or, if to the aggregate of all the members in this representative suit, the matter in controversy is of that value."* (Our italics.) The Court held there was jurisdiction, and that the Society members were proper parties to the action. However, it found it unnecessary to decide whether the Society had standing to sue.

We are convinced that our rulings on the jurisdictional questions now before us must be controlled by the decision in Gibbs v. Buck. True, the instant suit is not a class suit by representation, nevertheless, we think it is a class suit. Rule 23, supra, does not purport to define a class suit; it merely permits certain class suits of a limited nature to be brought in a limited manner. It is in no sense mandatory, and impliedly recognizes the right of all members of the class to join as plaintiffs if they so desire. See Thomson v. Gaskill, supra. If they deem it impracticable so to do, they may bring the action by representation under the rule. The limitation as to the nature of the suit that may be brought by representation is that the character of the right sought to be enforced for the class is either joint, or common, or secondary, or several. We are convinced that the instant case is a class suit. However, we do not say that fact alone authorizes an aggregation of values involved in order to build up the required jurisdictional amount. Rule 23 says nothing about aggregation of values involved. That privilege grows out of 28 U.S.C.A. § 41 as interpreted by the Supreme Court. See also Harvey v. American Coal Co., 7 Cir., 50 F.2d 832, certiorari denied 284 U.S. 669, 52 S.Ct. 43, 76 L.Ed. 566.

We do say, however, that the facts here pleaded and admitted are in all material respects analogous to those in Gibbs v. Buck, supra. True, the Society in that case existed in a certain sense for profit, and its interests in some respects were adverse to its members although not as against the defendants, while in the case at bar the Furniture Manufacturers Association was a non-profit organization, of which all other plaintiffs were members, and the Association was their agent. In the Gibbs case the Court said it was unnecessary to decide whether the Society was an interested party. We say the same with respect to the Association. If either is a disinterested party the District Court will no doubt eliminate it from the suit, but that fact would not be sufficient cause to dismiss the complaint.

■ In the instant case we have a common cause of action, based upon the same acts of the defendants. The plaintiffs have an undivided interest, though separable as between themselves, and the amount of their joint claim will be the test of jurisdiction. Cf. Clay v. Field, 138 U.S. 464, 11 S.Ct. 419, 34 L.Ed. 1044. The relief demanded is identical. If any one plaintiff should in a single suit recover on the demand here made by it or him, that judgment would of itself immediately furnish all the relief which the other plaintiffs are here demanding for themselves, except as to the amount of damages. That phase of this case is purely incidental, as all the appellees and the appellant respectively aver and admit that each of the defendants is financially irresponsible.

The equities of this case are impressive and they loudly appeal to the conscience of the court.

Affirmed.