## SOUTHERN WHITE LEAD Co. *v.* CARY and others.

*(Circuit Court, N. D. Illinois. October 10, 1885.)*

**1. TRADE-MARKS—INFRINGEMENT OF.**

The complainant in a trade-mark suit is entitled to relief if the marks or brands used by the defendants sufficiently resemble the complainant's marks or brands to be mistaken for them.

**2. SAME—INJUNCTION.**

An injunction should be granted if the defendants adopt their brand for the purpose of selling their goods as and for the goods of the complainant, or for the purpose of enabling others to do so, and the complainant has been injured or is likely to be injured thereby. In such case it will not be sufficient for the defendants to show that no deception is in fact practiced on those with whom they deal personally; but an injunction will be granted if consumers to whom the goods are intended to be resold are or may be deceived.

**3. SAME—USING NAME OF PLACE TO DECEIVE.**

Where manufacturers at one place falsely mark or brand their goods as manufactured at another, for the purpose of inducing trade which would otherwise go to manufacturers at such other place, such false marking will be considered as fraudulent and a "resort to a palpable trick," and, the complainant being injured thereby, the infringing manufacturers will be enjoined from thus using the name of the place where the complainant carries on its business.

In Equity.

*Banning & Banning,* for complainant.

*Dent, Black & Cratty Bros.,* for defendants.

GRESHAM, J., *(orally.)* The complainant is a large manufacturer of white lead at St. Louis. It stamps or stencils upon the upper

end or head of its kegs the words "Southern Company, St. Louis." These words encircle the head of the keg; "St. Louis" forming the lower half of the circle, and "Southern Company" the upper half; and they inclose the words: "Warranted strictly pure white lead in pure linseed oil." The complainant uses another brand or mark, in addition to the one already described, by simply stenciling a red crescent upon the upper half of the head of the keg. St. Louis has an established reputation for the manufacture and sale of pure white lead, and the complainant has had and maintained for years a large trade at that place as a manufacturer of this article. The evidence clearly shows that the complainant's lead is pure. The defendants are manufacturers of white lead at Chicago. They brand upon the heads of their kegs "Southwestern, St. Louis," surrounding the words "strictly pure white lead;" and the words "Southwestern, St. Louis," appear in the same form as the words "Southern Company, St. Louis," appear upon the complainant's keg, and the letters are the same in size and appearance. The crescent, however, does not appear on any of the defendants' kegs. The defendants also paste upon the sides of their kegs a label containing the words: "The white lead in this package is guarantied strictly pure, ground in bleached oil, and for purity, whiteness, and durability is not excelled by any lead manufactured."

It is shown by analysis, and not denied, that while the complainant's manufacture is unadulterated and free from impurities, the defendants' contains on an average only 50 per cent. of lead. The complainant claims a trade-mark in its two brands, one without the red crescent, and the other with it; and this bill is filed to enjoin the defendants from infringing the first of these trade-marks.

I shall not stop to inquire whether the complainant's claim to trade-mark is or is not well founded, as I think it is entitled to an injunction upon another ground. The defendants so brand the heads of their kegs as to naturally mislead and induce persons purchasing for consumption to suppose they are purchasing the complainant's lead, when they are getting an inferior article. The brand used by the defendants is so like the complainant's as to induce the public to mistake the one for the other. The defendants sell their goods to retail dealers, and it may be that such dealers are not deceived, but they sell to consumers who are or may be deceived. The complainant is entitled to relief if the brand used by the defendants sufficiently resembles the complainant's brand to be mistaken for it, and the defendants adopted their brand for the purpose of selling their kegs as the kegs of the complainant, or for the purpose of enabling retail dealers to do so, and the complainant has been injured by this fraud, or is likely to be injured by it.

The complainant manufactures its genuine white lead at St. Louis, and its reputation is already established as a manufacturer and dealer of this character. The defendants manufacture their adulterated and greatly inferior lead at Chicago, and stamp upon their kegs a false

brand in imitation of the complainant's brand. Why is this done unless it be in the hope of deceiving the public and injuring the complainant? Realizing that they could not engage in open, manly competition with the complainant, the defendants resort to a palpable trick. If this resulted in no injury to the complainant, or was likely to result in no injury to it, the bill would have to be dismissed. But the affidavits show that the defendants' kegs can and have been sold as the complainant's.

A temporary injunction will be granted restraining the defendants from branding upon their kegs the words "Southwestern" and "St. Louis."