BLACK HILLS JEWELRY MANUFACTURING CO., a South Dakota corporation; F. L. Thorpe Company, a South Dakota corporation and Stamper Jewelry Manufacturing, a South Dakota corporation, Plaintiffs,

v.

LaBELLE'S, a corporation, and Gold Rush, Inc. et al., and Herberger's Department Store, a corporation, Defendants.

Nos. CIV79–5108, CIV79–5070 and CIV79–5125.

United States District Court, D. South Dakota.

May 1, 1980.

George A. Bangs and James P. Hurley, Rapid City, S. D., for plaintiffs.

Gene N. Lebrun, Rapid City, S. D., Ronald L. Haskvitz and J. Christopher Cuneo, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

Plaintiffs bring this action under 15 U.S.C. § 1125(a), which is § 43(a) of what is

commonly known as the Lanham Act. This section provides:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

Plaintiffs are claiming that under this section they have the exclusive right to the use of the term Black Hills Gold Jewelry.

■ Under the Lanham Act the interests of the public are supreme. *Ebeling and Reuss Co. v. International Collectors Guild, Ltd.*, 462 F.Supp. 716 (E.D.Pa.1978). The ultimate test under the Act is whether there is a likelihood of confusion among consumers. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194 (9th Cir. 1979); *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154 (1st Cir. 1977); *Boston Professional Hockey Ass'n, Inc. v. Dallas Cap and Emblem Manufacturing, Inc.*, 510 F.2d 1004 (5th Cir. 1975). To establish such confusion it is not necessary that there be specific examples of consumer confusion presented to the court. *Continental Distilling Sales Co. v. Brancato*, 173 F.2d 296 (8th Cir. 1949); *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292 (E.D.Pa. 1976) *aff'd* 587 F.2d 602 (3rd Cir. 1978); *Apollo Distributing Co. v. Apollo Imports Inc.*, 341 F.Supp. 455 (S.D.N.Y.1972); *State of Florida v. Real Juices, Inc.*, 330 F.Supp. 428 (M.D.Fla.1971). The court need only find a likelihood of confusion.

This court has found that the use of the term Black Hills Gold Jewelry by the defendants has created the likelihood of consumer confusion. Defendants, however, claim that plaintiffs are barred from recovery as a matter of law because they are unable to establish secondary meaning, which defendants assert is a necessary part of plaintiffs' claim under § 1125(a). Defendants argue that the prime element of secondary meaning is an association in the mind of the consumer between the mark in question and a single source of the product. Defendants cite numerous cases and other authorities to support this position. *Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296 (9th Cir. 1979); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058 (2nd Cir. 1979); *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210 (8th Cir. 1976), *cert. denied* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976); *President & Trustees of Colby College v. Colby College-New Hampshire*, 508 F.2d 804 (1st Cir. 1975); *Carter-Wallace Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970); *Aloe Creme Laboratories, Inc. v. Milsan, Inc.*, 423 F.2d 845 (5th Cir. 1970) *cert. denied* 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970); *Spangler Candy Co. v. Crystal Pure Candy Co.*, 353 F.2d 641 (7th Cir. 1965); *Shoppers Fair of Arkansas, Inc. v. Sanders Co.*, 328 F.2d 496 (8th Cir. 1964); *G & C Merriam Co. v. Saalfield*, 198 F. 369 (6th Cir. 1912); *John Wright, supra; Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129 (S.D.N.Y.1972); *Douglas Laboratories Corp. v. Copper Tan*, 108 F.Supp. 837 (S.D.N.Y.1952); *In re Charles S. Loeb Pipes, Inc.*, 190 U.S.P.Q., 238 (1975); McCarthy, *Trademarks & Unfair Competition*, § 15:2A. Although there are cases in which courts have found secondary meaning without a single source, *Pillsbury-Washburn Flour Mills Co. v. Eagle*, 86 F. 608 (7th Cir. 1898), *Community of Roquefort v. William Faehndrich, Inc.*, 198 F.Supp. 291 (S.D.N.Y. 1961) *aff'd* 303 F.2d 494 (2nd Cir. 1962), this court does not argue with the authority

cited by defendants or with the general proposition that to establish secondary meaning there must be a single source of the product in question.

■ Most of the cases dealing with § 1125(a) concern an attempt to protect an unregistered common law trade mark and obtain exclusive use of that mark. *See, e. g., New West Corp., supra; L'Aiglon Apparel v. Lana Lobell*, 214 F.2d 649 (3rd Cir. 1954). This appears to be what plaintiffs are asking for in this case. In order to establish exclusive use to a mark it appears secondary meaning and a single source must be established. As noted above, plaintiffs are unable to do this. However, this does not foreclose their ability to recover under the Lanham Act.

■ Defendants assert that geographic names, if they are not generic, are descriptive and as such require secondary meaning before they are entitled to protection under the Lanham Act. *Elgin National Watch Co. v. Illinois Watch Case Co.*, 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365 (1901); *Aloe Creme Laboratories, supra; Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857 (5th Cir. 1967); *North American Aircoach Systems v. North American Aviation*, 231 F.2d 205 (9th Cir. 1955); *National Lead Co. v. Wolfe*, 223 F.2d 195 (9th Cir. 1955); *Capehart v. Lund*, 14 Alaska 11, 107 F.Supp. 10 (1952). This court agrees that if a geographic name is to be used exclusively by a producer that secondary meaning and a single source must be established. However, there are certain instances where geographic names are entitled to limited protection without the necessity of establishing secondary meaning and that the product in question comes from a single source.

A number of cases predating the Lanham Act dealt with situations where a manufacturer or a group of manufacturers from a certain area asserted their right to the use of a geographic designation. *Grand Rapids Furniture Co. v. Grand Rapids Furniture Co.*, 127 F.2d 245 (7th Cir. 1942); *Pillsbury-Washburn, supra; California Fruit Canners' Ass'n v. Myer*, 104 F. 82 (D.Md.1899); *City of Carlsbad v. Kutnow*, 68 F. 794 (S.D.N.Y. 1895) *aff'd* 71 F. 167 (2nd Cir. 1895); *Southern White Lead Co. v. Cary*, 25 F. 125 (N.D.Ill.1885); *Anheuser-Busch Brewing Ass'n v. Piza*, 24 F. 149 (S.D.N.Y.1885); *Northcutt v. Turney*, 101 Ky. 314, 41 S.W. 21 (1897); *El Modello Cigar Mfg. Co. v. Gato*, 25 Fla. 886, 7 So. 23 (1890); *Newman v. Alvord*, 51 N.Y. 189 (1872). *See also La Republique Francaise v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247 (1903); *Manitou Springs Mineral Water Co. v. Schueler*, 239 F. 593 (8th Cir. 1917); *Finchley v. Finchly Co.*, 40 F.2d 736 (D.Md.1929). Several of these cases involved a situation similar to what we have here where a group of manufacturers from a certain area banded together to prevent an outsider from using a geographic description that the complainants had been using to identify their product.

In *Pillsbury-Washburn, supra*, a group of flour manufacturers in Minneapolis who produced flour labelled with the words "Minneapolis Patent" or "Minneapolis, Minnesota" brought a suit for injunctive relief against a company which produced flour in Chicago also using the word "Minneapolis" to identify its product. The court held that the plaintiffs had built a reputation for quality and enjoined the defendants from using the word "Minneapolis" to describe any flour not produced in Minneapolis.

Another case dealing with multiple plaintiffs is *California Fruit Canners, supra*. In that case the plaintiffs were a number of California corporations engaged in pear canning who employed the term "California Pears" to label their product. The defendants were engaged in the canning business in Baltimore. They also labelled their pears as "California," although they were neither grown nor canned there. In holding for the plaintiffs the court stated:

This is a clear case of fraudulent competition by the use of a geographical name which the complainants are entitled to use, but the respondents are not. It is true that no one single packer can acquire an exclusive right to use, as a private trademark, "California Pears," or "Cali-

fornia," as a label on canned pears; but all the persons who put up California grown pears in California have a right to use it; and it has acquired . . . an especial trade significance of value. *Id.* at 83.

One more case involving multiple plaintiffs asserting the right to a geographical term is *Grand Rapids Furniture, supra.* The plaintiffs in that case were a group of furniture manufacturers from Grand Rapids, Michigan who produced high quality furniture which was designated as "Grand Rapids furniture." They sought to enjoin a Chicago furniture manufacturer from operating under the name of the Grand Rapids Furniture Company. The court, in finding the equities in the case strongly supporting plaintiffs' position, issued the injunction. In doing so the court stated:

> The defendants have formed corporations under the name "Grand Rapids Furniture Company" with the intent to mislead and defraud the public by using the words "Grand Rapids" and the words "Grand Rapids furniture" in their advertising and leading the public to believe through the medium of newspaper and radio advertising, store signs, window displays, and otherwise, that stock in their store was made up of products of the factory located in the city of Grand Rapids, Michigan . . . . *Id.* at 247.

One final pre-Lanham Act case which should be noted is *California Apparel Creators v. Wieder of California,* 162 F.2d 893 (2nd Cir. 1947) *cert. denied* 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 (1947). In that case an unincorporated trade association representing California apparel manufacturers and seventy-five of its members brought suit attempting to enjoin several New York clothes manufacturers from using the words "California" and "Californian" in the promotion of their product. The court, in denying plaintiffs' request for relief, held that to recover the plaintiffs must establish secondary meaning, which they could not do because there was no single source of their product. The court, however, did state that,

> [N]ewer forms of trade deceit may be developed where the literal language of the "single source" rule may not adequately reflect the precedents. This seems particularly the case with reference to certain geographical names where through some combination of circumstances such a name may come to mean in the public mind not a single source, but a number, even though limited, of independent manufacturers or producers. *Id.* at 898.

The court went on to distinguish the *California Apparel* case from the *Grand Rapids Furniture* case on the basis of the sheer numbers involved. In *California Apparel* there were seventy-six plaintiffs encompassing an entire state, while in *Grand Rapids Furniture* there were only twenty-five plaintiffs who were all from the same city. Also, *California Apparel* involved numerous types of goods from clothing to jewelry, while *Grand Rapids Furniture* involved only furniture. The similarities between the case at bar, where there are only three plaintiffs from a small geographical area all producing only one product, and the *Grand Rapids Furniture* case, seem greater than those between the case at bar and the *California Apparel* case. Therefore, the *California Apparel* case is distinguishable from the present case and does not appear to establish a precedent calling for denial of plaintiffs' claim for relief.

The pre-Lanham Act cases clearly establish that prior to the Lanham Act's passage it was possible for a group of manufacturers to assert the right to a geographical designation without establishing secondary meaning and a single source. *See Germain, Unfair Trade Practice Under Section 43(a) of the Lanham Act: You've Come A Long Way, Baby—Too Far, Maybe?,* 49 Ind.L.J. 84, 86. Therefore, the question becomes whether the Lanham Act changed this situation and now makes it necessary that secondary meaning and a single source must always be established before a geographical term can be protected.

■ It does not appear that this is so. Section 1125(a) was the result of a congres-

sional intent to fashion a new federal remedy against particular kinds of unfair competition. *L'Aiglon Apparel, supra; Bogene, Inc. v. Whit-Mor Mfg. Co.*, 253 F.Supp. 126 (S.D.N.Y.1966). A number of cases state that the Lanham Act should be broadly construed. *Federal-Mogul-Bower Bearings, Inc. v. Azoff*, 313 F.2d 405 (6th Cir. 1963); *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538 (2nd Cir. 1956); *L'Aiglon Apparel, supra; Best & Co. v. Miller*, 167 F.2d 374 (2nd Cir. 1948); *State of Florida, supra; Geisel v. Poynter Products, Inc.*, 283 F.Supp. 261 (S.D.N.Y.1968). Furthermore, several post Lanham Act cases have indicated that producers in a certain geographical area have a right to protect the use of that area's name from outsiders. In *Community of Roquefort, supra*, the court stated:

> [G]eographical names which are primarily descriptive are not registrable. However, this has not prevented an injunction from issuing on a complaint of a manufacturer producing in a locality, against a non-resident manufacturer using the geographical name.

Likewise, in *North American Air, supra*, at 210, it was stated:

> Geographic names which have connotations of the place of use or manufacture are generally subject to use by all persons or concerns who manufacture or operate *in the area*." (Emphasis added.)

*See also McCabe-Powers Auto Body Co. v. American Truck Equipment Co.*, 150 F.Supp. 194 (D.Or.1957).

The statute under which plaintiffs brought this action appears to continue this tradition of providing protection against outsiders for those using a geographical name. The statute prohibits a "false designation of origin," which would appear to prohibit a producer from labelling his product so as to make consumers believe it came from somewhere it did not. Another section of the Lanham Act (15 U.S.C. § 1127) deals with what is known as a certification mark. This section also appears to provide protection for a group of producers using a geographical name to designate their prod-

uct. A certification mark is defined as "a mark used upon or in connection with the products or services of one or more persons other than the owner of the mark to certify regional or other origin . . . ." From the definition of the term it is clear that a single source is not required. An example of the use of a certification mark is illustrated in *Community of Roquefort, supra*. In that case producers of a sheep's milk blue-mold cheese, who held a registered certification mark for the term "Roquefort," were able to enjoin a manufacturer of the same type of cheese produced in Hungary and Italy from using the term "Roquefort" to designate cheese not made in the community of Roquefort, France.

 As stated earlier, most cases brought under § 1125(a) deal with an attempt to gain the exclusive right to make use of an unregistered common law trade mark. Section 1125(a), however, can also be used to protect an unregistered common law certification mark. In *State of Florida, supra*, at 431, the court held, "that the scope of Section 43(a) is sufficiently broad to encompass protection of unregistered common law certification marks." Therefore, since this court has concluded that consumers generally associate the words Black Hills Gold and Black Hills Gold Jewelry with jewelry manufactured in the Black Hills of South Dakota, the term Black Hills Gold Jewelry can be considered an unregistered common law certification mark and plaintiffs can be afforded relief under § 1125(a).

 The plaintiffs have worked for many years to perfect and establish a market for their high quality jewelry which they have called Black Hills Gold Jewelry. In just the last few years the defendants and others have begun to use the terms Black Hills Gold or Black Hills Gold Jewelry to promote their products. To allow others to make use of the name which plaintiffs have toiled so hard to establish would be clearly inequitable. Although plaintiffs are not entitled to the exclusive use of the terms Black Hills Gold or Black Hills Gold Jewelry, they do have the right to prevent others from misleading the public as to the geographical

origin of Black Hills Gold products. Based on the foregoing, the defendants should be enjoined from further use of the terms Black Hills Gold and Black Hills Gold Jewelry to describe jewelry made outside of the Black Hills of South Dakota.

This cause for injunctive relief came on for trial and was tried commencing on January 7, 1980, and concluding on March 5, 1980, before the Court, sitting without a jury. George A. Bangs and James P. Hurley appeared as counsel for the Plaintiffs. Gene N. Lebrun appeared as counsel for Defendants Gold Rush, Inc., and Herberger's Department Store, and as co-counsel for Defendant LaBelle's. Ronald L. Haskvitz and J. Christopher Cuneo also appeared as co-counsel for Defendant LaBelle's. Having heard the testimony, having examined the other evidence introduced by the respective parties, and having reviewed the briefs and proposed findings submitted by the respective parties, the Court, being fully advised herein, makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The following Findings of Fact are the trial Court's findings. Notwithstanding occasional similarities between the Court's findings and the findings proposed by the parties hereto, careful reading will reveal them to be the product of the independent thought of the Court.

1. This action is brought under § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a). Jurisdiction is conferred upon the Court by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332 and 1338(a) and (b).

2. Plaintiff Black Hills Jewelry Manufacturing Company is a South Dakota corporation which is primarily engaged in the manufacture and wholesaling of three-color gold, grape and leaf design jewelry with a limited retail outlet at its Rapid City, South Dakota, manufacturing plant.

3. Plaintiff Black Hills Jewelry Manufacturing Company designates its three-color gold, grape and leaf design jewelry as "Black Hills Gold Jewelry" and "Land-strom's Original Black Hills Gold Creations."

4. Plaintiff F. L. Thorpe & Company, Inc. is a South Dakota corporation which manufactures and wholesales three-color gold, grape and leaf design jewelry and also retails its jewelry at its plant in Deadwood, South Dakota.

5. Plaintiff F. L. Thorpe & Company, Inc. designates its product as "Original Black Hills Gold Jewelry" and "F. L. Thorpe & Company Original Black Hills Gold Jewelry."

6. Plaintiff Stamper Jewelry Manufacturing Company is a South Dakota corporation which manufactures and wholesales three-color gold, grape and leaf design jewelry and also retails its jewelry at its plant in Rapid City, South Dakota.

7. Plaintiff Stamper Jewelry Manufacturing Company designates its jewelry as "Stamper's Genuine Black Hills Gold Jewelry."

8. Rapid City, South Dakota and Deadwood, South Dakota are located within the Black Hills of South Dakota.

9. Plaintiffs and their predecessors in business have produced high quality three-color gold, grape and leaf design jewelry in the Black Hills of South Dakota, employing the use of the terms Black Hills Gold or Black Hills Gold Jewelry for almost one hundred years.

10. The three plaintiffs are separate, distinct and independent companies with no contractual, express or implied, relationship, agency, or licensing agreement between or among any of them.

11. None of the three Plaintiffs has any registered trademark, state or federal, on any of the products manufactured by them with the exception of a federal trademark obtained by Plaintiff Black Hills Jewelry Manufacturing Company whereby it utilizes the tradename "Black Hills Gold J Co." Black Hills Jewelry Manufacturing Company, however, disclaims in that federal registration the term "Black Hills Gold."

12. Defendant Gold Rush, Inc. is a North Dakota corporation located in Bismarck, North Dakota, which is engaged in the manufacture and wholesale of jewelry in the three-color gold, grape and leaf design.

13. The product of Gold Rush, Inc. is designated as "Black Hills Gold Jewelry by Gold Rush" and is so distributed to independent retail dealers.

14. Defendant Herberger's Department Stores is a Minnesota corporation with its principal place of business in St. Cloud, Minnesota. It operates eighteen retail department stores under its own name, located across the Midwest.

15. Defendant Herberger's does not manufacture wholesale products but is engaged in the retail sale at showrooms of many products, including jewelry, and first promoted and sold Black Hills Gold Jewelry by Gold Rush in March of 1979.

16. Defendant LaBelle's is a division of Modern Merchandising, Inc., a Minnesota corporation. It operates a retail catalogue showroom business with approximately 27 retail showrooms in nine states.

17. Defendant LaBelle's does not manufacture jewelry, but rather purchases jewelry from manufacturers located throughout the United States.

18. Defendant LaBelle's has offered for sale three-color gold, grape and leaf design jewelry designated as Black Hills Gold Jewelry which was manufactured by both Gold Rush, Inc. of Bismarck, North Dakota and Felco Jewel Industries of Rio Rancho, New Mexico.

19. Neither Bismarck, North Dakota, where Black Hills Gold Jewelry by Gold Rush is produced, nor Rio Rancho, New Mexico, where Black Hills Gold Jewelry by Felco is produced, are located in the Black Hills of South Dakota.

20. In connection with its store located in Sioux Falls, South Dakota, Defendant Herberger's advertised in the Sioux Falls Argus Leader a sale of "Black Hills Gold Jewelry by Gold Rush" and included in said advertisement a picture of Mount Rush-

more National Monument, which is located in the Black Hills of South Dakota.

21. Defendant LaBelle's has also run advertisements promoting the sale of so-called Black Hills Gold Jewelry in newspapers in Sioux Falls, South Dakota, Grand Forks, North Dakota and Rapid City, South Dakota. These advertisements have included pictures of Mount Rushmore National Monument, even though the jewelry advertised was manufactured in either Bismarck, North Dakota or Rio Rancho, New Mexico.

22. Both Defendants Herberger's and LaBelle's have sold the three-color gold, grape and leaf design jewelry manufactured outside the Black Hills as Black Hills Gold Jewelry.

23. Defendants have been manufacturing, promoting and selling gold jewelry products as Black Hills Gold Jewelry for less than two years prior to the commencement of this litigation.

24. Throughout the years a number of manufacturers, other than plaintiffs, have produced three-color gold, grape and leaf design jewelry similar to that produced by Plaintiffs. This jewelry has not, however, been called Black Hills Gold or Black Hills Gold Jewelry until recently.

25. Various manufacturers and retailers throughout the United States, other than any of the Plaintiffs or Defendants, now promote and sell three-color gold, grape and leaf design jewelry not manufactured in the Black Hills as Black Hills Gold or Black Hills Gold Jewelry. Other than the Plaintiffs, however, all of the manufacturers or retailers of jewelry called Black Hills Gold or Black Hills Gold Jewelry commenced calling their products such within the last several years.

26. The consuming public generally considers the terms Black Hills Gold or Black Hills Gold Jewelry to refer to jewelry products manufactured in the Black Hills of South Dakota.

27. The actions of the Defendants in promoting and selling jewelry not manufactured in the Black Hills as Black Hills Gold or Black Hills Gold Jewelry has created the

likelihood of consumer confusion as to the origin of products labelled as Black Hills Gold or Black Hills Gold Jewelry.

28. The first time any of the Plaintiffs became aware of the use of the name Black Hills Gold Jewelry by a manufacturer of three-color gold, grape and leaf design jewelry located outside the Black Hills of South Dakota occurred approximately three years prior to the filing of this litigation. Upon Plaintiffs' demand, the Rhode Island firm producing such jewelry stopped using the term Black Hills Gold to identify its products.

29. The Defendants' first use of the name Black Hills Gold or Black Hills Gold Jewelry on any of their jewelry products occurred approximately eighteen months prior to the commencement of this litigation. Plaintiffs filed this action soon after the Defendants openly advertised their products in local newspapers as Black Hills Gold Jewelry.

30. Plaintiffs have been reasonably diligent in taking action to protect the name Black Hills Gold Jewelry from use by manufacturers of similar products located outside the Black Hills of South Dakota.

31. Plaintiffs have not been guilty of unclean hands surrounding their attempts to protect their use of the terms Black Hills Gold and Black Hills Gold Jewelry.

32. Use of the terms Black Hills Gold or Black Hills Gold Jewelry will cause consumers to purchase products of the Defendants when they in fact wished to purchase a product manufactured in the Black Hills of South Dakota. This will enable the Defendants to wrongfully trade upon and profit from Plaintiff's reputation and good will and will result in business losses to Plaintiffs.

## CONCLUSIONS OF LAW

1. Plaintiffs are not guilty of laches, have not acquiesced in nor abandoned the use of the terms Black Hills Gold or Black Hills Gold Jewelry to manufacturers located outside the Black Hills of South Dakota and are not estopped from bringing this action to protect their property rights in these terms.

2. Plaintiffs have established that they have lost business and stand to suffer irreparable injury to their business, reputation and good will if Defendants are not restrained from promoting their products as Black Hills Gold or Black Hills Gold Jewelry.

3. In order to obtain the exclusive right to the use of the terms Black Hills Gold or Black Hills Gold Jewelry it is necessary for Plaintiffs to establish that they are entitled to a common law trademark.

4. In order to possess a common law trademark, Plaintiffs must establish that their products have acquired a secondary meaning.

5. To establish a secondary meaning, while it is not necessary to show that the public has become conscious of the personal identity of the manufacturer, it must be shown that whatever is asserted to carry the secondary meaning has come to signify origin from a single, though anonymous source.

6. In that there are three plaintiffs, there cannot be a single source of the product in question and Plaintiffs are precluded as a matter of law from establishing secondary meaning.

7. Even though Plaintiffs are precluded from establishing secondary meaning, they still have certain rights in the use of the terms Black Hills Gold and Black Hills Gold Jewelry under 15 U.S.C. § 1125(a).

8. Section 1125(a) also can be used to provide protection for a common law certification mark. A certification mark is defined as "a mark used upon or in connection with the products or services of one or more persons other than the owner of the mark to certify regional or other origin . . . ." 15 U.S.C. § 1127. A geographical designation can be classified as a certification mark.

9. The fact that Plaintiffs have used the terms in question to demonstrate to the consuming public the regional origin of

their product entitles them to the protection of a common law certification mark, which will forbid the Defendants from designating products produced outside the Black Hills of South Dakota as Black Hills Gold or Black Hills Gold Jewelry. *See* 15 U.S.C. § 1127.

Based on the foregoing, it is hereby

ORDERED that the Defendants, their servants, agents and employees, and all persons acting by, through or under authority of any of the Defendants are permanently enjoined from advertising, promoting, selling or offering for sale as Black Hills Gold or Black Hills Gold Jewelry, any item which is not manufactured in the Black Hills of South Dakota.