633 F.2d 746
 208 U.S.P.Q. 631, 7 Fed. R. Evid. Serv. 252
 BLACK HILLS JEWELRY MANUFACTURING CO., a South Dakota
Corporation, F. L. Thorpe Company, a South Dakota
Corporation and Stamper Jewelry
Manufacturing, a South Dakota
Corporation, Appellees,
v.
GOLD RUSH, INC., a North Dakota Corporation a/k/a "Black
Hills Gold Jewelry by Gold Rush", Appellant,
and
Kirk Enterprises, Inc., a New Mexico Corporation, a/k/a
"Black Hills Gold Jewelry by Kirk",
LaBelle's, a Corporation, Appellant,
Herberger's Department Store, a Corporation, Appellant.
 No. 80-1426.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 8, 1980.
Decided Nov. 13, 1980.
 
 Ronald L. Haskvitz, Minneapolis, Minn., for appellants.
 Geo. A. Bangs and James P. Hurley, Rapid City, S.D., for appellees.
 Before BRIGHT, ROSS and STEPHENSON, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 Plaintiffs-appellees are three South Dakota corporations located in the Black Hills area of South Dakota. They are in the business of manufacturing a certain design of gold jewelry which they market under the name "Black Hills Gold Jewelry." Appellees brought this action under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), seeking injunctive relief against the use by defendants-appellants of the words "Black Hills Gold Jewelry" to describe jewelry of a style similar to that of appellees, but not manufactured in the Black Hills of South Dakota.
 
 
 2
 The district court,[1] relying on 15 U.S.C. §§ 1125(a) and 1127, held that although appellees were not entitled to the exclusive use of the phrase "Black Hills Gold Jewelry," an injunction would issue prohibiting appellants from using the phrases "Black Hills Gold" or "Black Hills Gold Jewelry" to describe jewelry not made in the Black Hills of South Dakota. Appellants' major contentions on appeal are that: (1) The district court incorrectly held appellants could be afforded relief based on the existence of a common law unregistered certification mark; (2) the district court was clearly erroneous in several factual findings especially in finding that the phrase "Black Hills Gold Jewelry" was merely geographically descriptive and not a generic term for the design of the gold jewelry; (3) several evidentiary rulings by the district court were improper; and (4) the issuing of the injunction was improper. We affirm.
 
 I. BACKGROUND
 
 3
 Appellees are three separate, distinct, and independent companies that manufacture basically only one product, three-color gold jewelry in a grape and leaf design. All three appellees market their product as "Black Hills Gold Jewelry," sometimes preceded by their corporate name and the word "original" or "genuine." See Findings of Fact 2-11, Black Hills Jewelry Manufacturing Co. v. LaBelle's, 489 F.Supp. 754, 760 (D.S.D.1980). All three companies can trace their beginnings back to one of the earliest manufacturers of "Black Hills Gold Jewelry," Mr. F. L. Thorpe.
 
 
 4
 Until recently, appellees were the only manufacturers of this design of jewelry who marketed it as "Black Hills Gold Jewelry," and their only place of manufacture was and is the Black Hills of South Dakota. Beginning sometime in 1977, other manufacturers and retailers began to market jewelry of this or a similar design as "Black Hills Gold Jewelry," although none of the jewelry was manufactured in the Black Hills.[2]
 
 
 5
 In 1978, appellant Gold Rush, Inc. began manufacturing three-color gold grape and leaf design jewelry in Bismarck, North Dakota and selling it as "Black Hills Gold Jewelry by Gold Rush." The other two appellants are retailers of "Black Hills Gold Jewelry." Appellant Herberger's purchased jewelry which was sold as "Black Hills Gold" from Gold Rush, Inc., and appellant LaBelle's purchased jewelry which was sold as "Black Hills Gold" from both Gold Rush, Inc. and Felco Jewel Industries, a manufacturer of jewelry located in Rio Rancho, New Mexico. Appellees brought suit in August 1979, against Gold Rush and later against the retailers. These suits were consolidated for trial.
 
 
 6
 On May 1, 1980, the district court issued its Findings of Facts, Conclusions of Law, and Memorandum Opinion. See Black Hills Jewelry Manufacturing Co. v. LaBelle's, 489 F.Supp. 754 (D.S.D.1980). In addition to the facts summarized above and detailed infra as discussion requires, the district court made the following findings of fact which are relevant to this appeal:
 
 
 7
 20. In connection with its store located in Sioux Falls, South Dakota, Defendant Herberger's advertised in the Sioux Falls Argus Leader a sale of "Black Hills Gold Jewelry by Gold Rush" and included in said advertisement a picture of Mount Rushmore National Monument, which is located in the Black Hills of South Dakota.
 
 
 8
 21. Defendant LaBelle's has also run advertisements promoting the sale of so-called Black Hills Gold Jewelry in newspapers in Sioux Falls, South Dakota, Grand Forks, North Dakota and Rapid City, South Dakota. These advertisements have included pictures of Mount Rushmore National Monument, even though the jewelry advertised was manufactured in either Bismarck, North Dakota or Rio Rancho, New Mexico.
 
 
 9
 26. The consuming public generally considers the terms Black Hills Gold or Black Hills Gold Jewelry to refer to jewelry products manufactured in the Black Hills of South Dakota.
 
 
 10
 27. The actions of the Defendants in promoting and selling jewelry not manufactured in the Black Hills as Black Hills Gold or Black Hills Gold Jewelry has created the likelihood of consumer confusion as to the origin of products labelled as Black Hills Gold or Black Hills Gold Jewelry.
 
 
 11
 28. The first time any of the Plaintiffs became aware of the use of the name Black Hills Gold Jewelry by a manufacturer of three-color gold, grape and leaf design jewelry located outside the Black Hills of South Dakota occurred approximately three years prior to the filing of this litigation. Upon Plaintiffs' demand, the Rhode Island firm producing such jewelry stopped using the term Black Hills Gold to identify its products.
 
 
 12
 29. The Defendants' first use of the name Black Hills Gold or Black Hills Gold Jewelry on any of their jewelry products occurred approximately eighteen months prior to the commencement of this litigation. Plaintiffs filed this action soon after the Defendants openly advertised their products in local newspapers as Black Hills Gold Jewelry.
 
 
 13
 30. Plaintiffs have been reasonably diligent in taking action to protect the name Black Hills Gold Jewelry from use by manufacturers of similar products located outside the Black Hills of South Dakota.
 
 
 14
 31. Plaintiffs have not been guilty of unclean hands surrounding their attempts to protect their use of the terms Black Hills Gold and Black Hills Gold Jewelry.
 
 
 15
 32. Use of the terms Black Hills Gold or Black Hills Gold Jewelry will cause consumers to purchase products of the Defendants when they in fact wished to purchase a product manufactured in the Black Hills of South Dakota. This will enable the Defendants to wrongfully trade upon and profit from Plaintiff's reputation and good will and will result in business losses to Plaintiffs.
 
 
 16
 Id. at 761-62. The district court granted appellees injunctive relief on what we view as two alternative holdings. The court first stated:
 
 
 17
 The statute (section 43(a) of the Lanham Act, 11 U.S.C. § 1125(a)) under which plaintiffs brought this action appears to continue this tradition of providing protection against outsiders for those using a geographical name. The statute prohibits a "false designation of origin," which would appear to prohibit a producer from labelling his product so as to make consumers believe it came from somewhere it did not.
 
 Id. at 759. The court also held that:
 
 18
 Another section of the Lanham Act (15 U.S.C. § 1127) deals with what is known as a certification mark. This section also appears to provide protection for a group of producers using a geographical name to designate their product.
 
 
 19
 Id.
 
 II. COMMON LAW CERTIFICATION MARK
 
 20
 Neither party questions the district court's conclusion that appellees are not entitled to exclusive use of the phrase "Black Hills Gold Jewelry" as a trademark. The district court so concluded because appellees were unable to establish secondary meaning. See Conclusions of Law 6, Black Hills Jewelry Manufacturing Co. v. LaBelle's, supra, 489 F.Supp. at 762.
 
 
 21
 Appellants object to what they contend to be the sole holding of the district court-that appellees were entitled to prohibit appellants from using the phrase "Black Hills Gold Jewelry" by virtue of appellees having a common law unregistered certification mark. We agree with appellants that appellees are not entitled to the benefit of a certification mark.
 
 
 22
 15 U.S.C. § 1127 defines certification mark as "a mark used upon or in connection with the products or services of one or more persons other than the owner of the mark to certify regional or other origin * * *." (Emphasis added.) Here the products are those of appellees, who are not "one or more persons other than the owner of the mark." It is clear that the language of the statute prohibits the producers of the goods from being the owner of a certification mark.[3]
 
 III. SECTION 43(a) OF THE LANHAM ACT
 
 23
 We disagree with appellants' argument that the district court relied solely on the existence of a common law unregistered certification mark to afford relief. The district court's Memorandum Opinion discusses in detail unfair competition under section 43(a) of the Lanham Act, 11 U.S.C. § 1125(a). See Black Hills Jewelry Manufacturing Co. v. LaBelle's, supra, 489 F.Supp. at 756-59. It concluded that pre-Lanham Act cases established it was possible for a group of manufacturers to assert the right to a geographical designation without establishing secondary meaning and a single source. Id. at 757. The court also concluded that section 43(a) continued this tradition of providing protection against outsiders who use the same geographical designation. Id. at 759.
 
 
 24
 It is our view that the Findings of Fact support a conclusion that appellees are entitled to injunctive relief under section 43(a) of the Lanham Act. We agree with the district court that several cases prior to the Lanham Act protected groups of plaintiffs-producers who asserted their right to the use of a geographical designation in a suit against other producers who did not manufacture their goods in said area but nevertheless used the geographical designation in their name or label. See, e.g., Grand Rapids Furniture Co. v. Grand Rapids Furniture Co., 127 F.2d 245 (7th Cir. 1942); Pillsbury-Washburn Flour Mills Co. v. Eagle, 86 F. 608 (7th Cir. 1898), cert. denied, 173 U.S. 703, 19 S.Ct. 884, 43 L.Ed. 1184 (1899); California Fruit Canners' Ass'n v. Myer, 104 F. 82 (C.C.D.Md.1899).
 
 
 25
 Section 43(a) does not by its terms restrict the holdings of these cases. In fact section 43(a) obviates several requirements necessary under common law unfair competition. The "single source" rule has been held to be inapplicable to suits under section 43(a), and the "likely to be damaged" provision obviates the necessity of proving actual diversion of trade. For these reasons it has been stated that section 43(a) creates a federal statutory tort sui generis and does not merely codify the common law principles of unfair competition. L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649, 651 (3d Cir. 1954); Mutation Mink Breeders Association v. Lou Nierenberg Corp., 23 F.R.D. 155, 161 (S.D.N.Y.1959); Gold Seal Company v. Weeks, 129 F.Supp. 928 (D.D.C.1955), aff'd sub nom. S. C. Johnson & Son, Inc. v. Gold Seal Co., 230 F.2d 832 (D.C.Cir.), cert. denied, 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed.2d 50 (1956). See also Potato Chip Institute v. General Mills, Inc., 333 F.Supp. 173, 178-79 (D.Neb.1971), aff'd per curiam on basis of district court's opinion, 461 F.2d 1088 (8th Cir. 1972). See generally 1 R. Callmann, Unfair Competition, Trademarks, & Monopolies § 18.2(b), at 620-22 (3d ed.); J. McCarthy, Trademarks & Unfair Competition § 27:4, at 247-49 (1973); Comment, 58 Neb.L.Rev. 159 (1979); Note, 25 Drake L.Rev. 228 (1975).[4]
 
 
 26
 The plain meaning of the statute supports these views. Section 43(a) imposes civil liability upon "any person who shall * * * use in connection with any goods * * * a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same." It gives a cause of action to "any person doing business in the locality falsely indicated as that of origin * * * or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation." Clearly appellees fit this definition. As stated in the landmark case of L'Aiglon Apparel v. Lana Lobell, Inc., supra, 214 F.2d at 651:
 
 
 27
 (H)owever similar to or different from pre-existing law, here is a provision of a federal statute which, with clarity and precision adequate for judicial administration, creates and defines rights and duties and provides for their vindication in the federal courts. For illuminating discussions of Section 43(a) and its relation to precedent law, see Callman, False Advertising as a Competitive Tort, 1948, 48 Col.L.Rev. 876, 877-886; Bunn, The National Law of Unfair Competition, 1949, 62 Harv.L.Rev. 987, 998-1000.
 
 
 28
 Thus evidence of "palming off" or "passing off" is not required for recovery under section 43(a). Mutation Mink Breeders Association v. Lou Nierenberg Corp., supra, 23 F.R.D. at 161; Gold Seal Co. v. Weeks, supra, 129 F.Supp. at 939-40; 1 R. Callmann, supra, § 18.2(b), at 622. The fact appellants' goods may be "of equal quality is not of dispositional significance." Truck Equipment Service Co. v. Fruehauf Corp., 536 F.2d 1210, 1216 (8th Cir. 1976), cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1977).
 
 
 29
 Scotch Whiskey Association v. Barton Distilling Company, 489 F.2d 809 (7th Cir. 1973), aff'g 338 F.Supp. 595 (N.D.Ill.1971), a case similar to the case at bar, allowed recovery under section 43(a). In that case, two producers of Scotch whiskey and an association that promoted Scotch whiskey were granted an injunction against a third producer whose label indicated the product was Scotch whiskey, but whose product was in fact found to have ingredients not from Scotland. The district court found this to be a false designation of origin. The Seventh Circuit affirmed the finding of a section 43(a) violation and was apparently not troubled by any lack of secondary meaning or "single source." The court required nothing more than a showing that the designation was false and that defendant knew or should have known of the falsity. 489 F.2d at 811. See also Community of Roquefort v. William Faehndrich, Inc., 198 F.Supp. 291 (S.D.N.Y.1961), aff'd, 303 F.2d 494 (2d Cir. 1962).
 
 IV. GENERICNESS
 
 30
 Appellants argue that even if recovery would be allowed based on the district court's Findings of Fact, nevertheless several of these Findings of Fact are clearly erroneous and therefore the injunction was still improper. Appellants' major contention on this point is that the district court was clearly erroneous in finding the phrase "Black Hills Gold Jewelry" to be geographically descriptive of the gold jewelry. They argue that the evidence at trial established that the phrase was a generic reference to three-color gold grape and leaf design jewelry no matter where it was manufactured.
 
 
 31
 If "Black Hills Gold Jewelry" was found to be a generic term, then it would be in the public domain for all to use. Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). Appellants rely principally on the discussions of genericness in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 116, 59 S.Ct. 109, 112, 83 L.Ed. 73 (1938) ("shredded wheat" held generic) and Anti-Monopoly, Inc. v. General Mills Fun Group, 611 F.2d 296 (9th Cir. 1979) (involving genericness of "MONOPOLY").
 
 
 32
 The evidence at trial in the present case was conflicting concerning whether the public generally considered "Black Hills Gold Jewelry" to mean gold jewelry manufactured only in the Black Hills, or instead three-color gold grape and leaf design jewelry wherever produced. The district court found the former to be established by the evidence. For "Black Hills Gold Jewelry" to be generic, it must be applied to three-color gold grape and leaf design jewelry wherever produced. Community of Roquefort v. William Faehndrich, Inc., supra, 198 F.Supp. at 293. Appellants point to no evidence, nor does the record indicate any evidence introduced at trial establishing that outside manufacturers and dealers referred to their jewelry of this type as "Black Hills Gold Jewelry" prior to approximately late 1977 or early 1978. Indeed, appellees point to several manufacturers of gold jewelry of a design similar to that of appellees which had not referred to their product as "Black Hills Gold."
 
 
 33
 Although some catalogue houses, dealers and manufacturers have used the term to describe three-color gold grape and leaf design jewelry manufactured outside the Black Hills since early 1978, this is not controlling.[5] The first time another manufacturer used the name "Black Hills Gold" (approximately three years prior to this litigation) the appellees complained to the Rhode Island firm which stopped the practice. The appellees brought this action when appellants openly began advertising their product as "Black Hills Gold Jewelry." Findings of Fact 28, 29, Black Hills Jewelry Manufacturing Co. v. LaBelle's, supra, 489 F.Supp. at 762.
 
 
 34
 Evidence supporting the district court's finding that the term "Black Hills Gold Jewelry" is merely geographically descriptive included the fact appellees had advertised their product in a manner which utilized the history and folklore of the Black Hills of South Dakota. All gold jewelry sold as "Black Hills Gold" had been manufactured in the Black Hills for over one hundred years. Thus an association with the geographical area was established. That appellants had in mind using this favorable association is apparent from their advertisements prominently displaying Mount Rushmore, as well as using historical folklore of the Black Hills in their advertising. In examining all the evidence, we cannot say the district court's finding that the phrase "Black Hills Gold Jewelry" is merely geographically descriptive of origin (see Findings of Fact 9 & 26, Black Hills Jewelry Manufacturing Co. v. LaBelle's supra, 489 F.Supp. at 760, 761) is clearly erroneous.
 
 V. EVIDENTIARY ISSUES
 
 35
 Appellants allege it was reversible error for the district court to exclude a summary of testimony in Landstrom v. Thorpe, 189 F.2d 46 (8th Cir. 1951), cert. denied, 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620 (1952),[6] introduced in the instant case. The summary had apparently been attached as an appendix to appellant's brief submitted to the appellate court in that case, and were summaries of witnesses' testimony at the trial in federal district court. Appellants argue this testimony indicates that witnesses to that action believed that the term "Black Hills Gold" described the jewelry. The district court held the evidence did not satisfy either Fed.R.Evid. 801, 803, or 804(b)(1). Appellees point out that the exhibit was not an actual transcript of the trial testimony, but summaries submitted by counsel for argument to the circuit court of appeals. It argues these foundational problems also made it proper for the district court to refuse to admit the exhibit.
 
 
 36
 We agree with the district court that rule 801(d)(1) is inapplicable because none of the prior testimony is by a witness who testified in the instant case. Neither does this court believe that the district court's rulings under 803(3) and 803(8) were improper. The nature of the exhibit and its origin clearly indicated a lack of trustworthiness. Additionally, appellants have not shown that in Landstrom v. Thorpe, supra, the parties involved had similar motives to develop the testimony by direct, cross and redirect examination as required by rule 804(b)(1). It is our view that, in any event, the testimony of three witnesses as to the meaning of the phrase "Black Hills Gold" in 1951 in a lawsuit between manufacturers both located in the Black Hills would be of little probative value in the instant case.
 
 
 37
 Appellants also contend that exhibit 88 should not have been received. Exhibit 88 was an invoice from Pitlick Jewelry which accompanied the sale of a ring from Mount Rushmore Mountain Company to Milton Shaver, president of Black Hills Jewelry Manufacturing Co. Appellants complain that the lack of trustworthiness of the invoice together with its hearsay nature made admission improper because it does not describe the ring, and the nature and location of Pitlick Jewelry is not apparent. The trial court admitted the evidence "for whatever value it has," and we find no abuse of discretion in this ruling. The apparent purpose of the exhibit was to demonstrate that the jewelry was called "New Mexico Gold" to support the appellees' position "Black Hills Gold" was not generic. The exhibit was merely cumulative and any error would have been harmless.
 
 
 38
 We have examined the remaining evidentiary questions concerning alleged inconsistencies in the admission and exclusion of certain deposition testimony and trial testimony. We find no abuse of discretion on the part of the trial court in these rulings.
 
 VI. PROPRIETY OF INJUNCTION
 
 39
 Appellants argue that the injunction should not have issued because appellees did not show either irreparable harm or that money damages would be inadequate. They also argue the claim is barred by estoppel, laches, and acquiescence, and that the injunction is too broad.
 
 
 40
 It is our view that the injunction was proper. The district court found that there was a likelihood of confusion to consumers as to the origin of the products labelled as "Black Hills Gold" or "Black Hills Gold Jewelry." It found that appellees and their predecessors had made this high quality jewelry for over one hundred years and sold it as "Black Hills Gold Jewelry." It also found that appellants' use of the term would cause consumers who wished to purchase a product produced in the Black Hills to purchase appellants' product instead. It stated this would allow appellants to wrongfully profit from appellees' reputation and good will and result in business losses to appellees. See Findings of Fact 9, 26, 27 & 32, Black Hills Jewelry Manufacturing Co. v. LaBelle's, supra, 489 F.Supp. at 760-62.
 
 
 41
 It is unlikely that appellees could show specific monetary damages, yet clearly under the district court's findings they have suffered injury. To obtain an injunction under section 43(a) appellees need only show that the falsities complained of had a tendency to deceive. Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 649 (3d Cir. 1958). A finding of tendency to deceive satisfies the requisite of irreparable harm. See Ames Publishing Co. v. Walker-Davis Publications, Inc., 372 F.Supp. 1, 13 (E.D.Pa.1974); Note, 25 Drake L.Rev. 228, 236 (1975).[7]
 
 
 42
 We agree with the district court that appellees were reasonably diligent in taking action to protect the name "Black Hills Gold Jewelry." A Rhode Island firm which began using the term three years prior to this litigation stopped upon demand by the appellees. This action was brought eighteen months after appellants' first use and soon after appellants began openly advertising their jewelry as "Black Hills Gold" with pictures of Mount Rushmore in the ads. Appellants note appellees had not obtained a trademark, nor had they tried to obtain registration of a certification mark. This is not controlling in an action brought under section 43(a). Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1010 (5th Cir. 1975), cert. denied, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1976); Iding v. Anaston, 266 F.Supp. 1015 (N.D.Ill.1967); Comment, 58 Neb.L.Rev. 159, 161 (1979); Note, 25 Drake L.Rev. 228, 232 (1975). The district court's finding of due diligence is not clearly erroneous.
 
 
 43
 Appellants allege the injunction[8] was too broad. However there was evidence that both appellees and appellants were selling their products in a large geographical region, and it is not necessary that actual confusion of consumers be shown. Appellants were found to have made a false designation of origin of their goods and were enjoined from continuing the deceptive practice. Such an injunction is proper under the circumstances.
 
 
 44
 Affirmed.
 
 
 
 [1]
 The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota. The district court opinion appears at 489 F.Supp. 754
 
 
 [2]
 Neither appellants nor appellees obtain all their gold in the Black Hills, and appellees are alleging a false designation of origin only as to the manufacturing of the gold jewelry
 
 
 [3]
 We express no opinion as to whether the Lanham Act contemplates the protection of "unregistered common law certification marks." See State of Florida v. Real Juices, Inc., 330 F.Supp. 428, 432 (M.D.Fla.1971)
 
 
 [4]
 Professor Callmann noted that "section 43(a) of the Lanham Act clearly supports a concept far broader than 'the doctrine of the Grand Rapids case.' " 1 R. Callmann, supra, § 18.2(b) at 621-22
 
 
 [5]
 In fact there was some indication at trial that the owner of Felco convinced catalogue houses that it was permissible to refer to any three-color gold grape and leaf design jewelry as "Black Hills Gold" because it merely described the design of the jewelry
 
 
 [6]
 Landstrom v. Thorpe, 189 F.2d 46 (8th Cir. 1951) involved a suit by Thorpe against Landstrom to recover damages for wrongful registration of a trademark and unfair competition. The court found for Thorpe, holding that Landstrom had obtained the mark through false and fraudulent representations. Both parties to that action were predecessors to two of the appellees in the instant case
 
 
 [7]
 (A) showing of a likelihood of confusion of consumers will usually result in proving the requisite likelihood of damage to the plaintiff-competitor. Thus, the prime test of liability under § 43(a) is closely analogous to, if not identical with, the likelihood-of-confusion test of federal and common-law trademark infringement and unfair competition
 Since § 43(a) was passed as a consumer protection statute, the courts are not reluctant to allow a commercial plaintiff to obtain an injunction even where the likelihood of pecuniary injury to the plaintiff may be slight. Thus, under § 43(a), Congressional policy appears to encourage commercial companies to act as the fabled "vicarious avenger" of consumer rights. An injunction, as opposed to money damages, is no windfall to the commercial plaintiff. An injunction protects both consumers and the commercial plaintiff from continuing acts of false advertising. The fact that § 43(a) was passed to protect consumers as well as competitors is illustrated by the rule that a likelihood of consumer confusion is sufficient for injunctive relief. An injunction protects the consumer from continued false advertising. Money damages, on the other hand, primarily aid only the competitor, and he is required to satisfy a higher standard of proof as to injury.
 J. McCarthy, supra, § 27:5A at 250-51 (footnotes omitted).
 
 
 [8]
 The injunction stated:
 ORDERED that the Defendants, their servants, agents and employees, and all persons acting by, through or under authority of any of the Defendants are permanently enjoined from advertising, promoting, selling or offering for sale as Black Hills Gold or Black Hills Gold Jewelry, any item which is not manufactured in the Black Hills of South Dakota.
 Black Hills Jewelry Manufacturing Co. v. LaBelle's, supra, 489 F.Supp. at 763.