**STATE OF FLORIDA, Department of Citrus, Plaintiff,**

v.

**REAL JUICES, INC., and John C. Youngblood, Defendants.**

**Civ. No. 70–251–ORL.**

United States District Court,
M. D. Florida,
Orlando Division.

July 20, 1971.

James L. Dooley, of Cushman, Darby & Cushman, Washington, D. C., Monterey Campbell, Bartow, Fla., for plaintiff.

Robert W. Duckworth, of Duckworth & Hobby, Charles E. Davis, of Fishback, Davis, Dominick & Salfi, Orlando, Fla., for defendants.

## OPINION

GEORGE C. YOUNG, District Judge.

Plaintiff in this case is the State of Florida, Department of Citrus. The de-

fendant, Real Juices, Inc., is a corporation organized under the laws of the State of Florida and the defendant, John C. Youngblood, is the president of the defendant, Real Juices, Inc., and is a resident of Florida. Under the Lanham Trademark Act (15 U.S.C. § 1125 et seq.) plaintiff seeks to enjoin defendants' use of the name "Sunshine Tree". Plaintiff claims that the defendants have introduced into commerce an orange juice product under the trademark or brand name "Sunshine Tree", thereby infringing on plaintiff's unregistered certification mark[1] of the words "Sunshine Tree" in its advertising and promotion of Florida citrus and its common law certification mark employed to identify citrus products originating in Florida. Further, plaintiff alleges defendants registered that name ("Sunshine Tree") as a trademark for orange juice under the registration statutes of a number of states and therefore claim exclusive proprietary rights in those words. Plaintiff contends that defendants' actions constitute false representation under Section 43(a) of the Act, 15 U.S.C. § 1125(a) and an infringement of plaintiff's common law rights and that defendants' continued usage of the name "Sunshine Tree" serves to confuse the public, create a cloud over and dilute plaintiff's rights in its mark.

This Court's jurisdiction is invoked under Section 39 of the Act (15 U.S.C. § 1121). Because there is no diversity of citizenship, jurisdiction of this Court can exist only if it arises under the Lanham Act (15 U.S.C. § 1121).

Several threshold issues require determination before consideration of the question of a preliminary injunction. In this action plaintiff seeks to protect common law rights in an unregistered certification acquired initially through television, radio and newspaper advertis-

---

1. 15 U.S.C. § 1127 defines "certification mark" as "a mark used upon or in connection with the products or services of one or more persons other than the owner of the mark to certify regional or other origin, material, mode of manufacture, quality, accuracy or other characteristics of such goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

ing and commercials featuring Miss Anita Bryant, singing a variety of "Florida Sunshine Tree" songs. The essential issue first to be determined is whether federal trademark law protects an unregistered common law certification mark from false representation and infringement. Resolution of this question requires consideration of several related issues:

(1) Does the Lanham Act protect registered certification marks?

(2) Can rights in a common law certification mark be acquired in the same manner as other marks?

(3) Does Section 43(a) of the Act protect unregistered trademarks, and if so,

(4) Should the scope of Section 43(a) also be found to encompass false representation involving unregistered certification marks?

■ First, on the question of Lanham Act protection of registered certification marks, 15 U.S.C. § 1054 specifically states in part:

"Subject to the provisions relating to the registration of trademarks, so far as they are applicable, * * * certification marks, including indications of regional origin used in commerce, shall be registrable under this chapter, in the same manner and with the same effect as are trademarks, by persons, * * * States, * * *, exercising legitimate control over the use of the marks sought to be registered, * * *, and when registered they shall be entitled to the protection provided in this chapter in the case of trade-marks."

This statutory provision authorized federal registration of certification marks and brings them within the protection of other provisions of the Lanham Act including Section 43(a), 15 U. S.C. § 1125(a).

As to the second question, whether common law rights can be created in a certification mark in the same manner as in other marks, i. e., trademarks, it does not appear that this issue has been decided in any reported cases. However, the case of Pillsbury-Washburn Flour Mills Co. v. Eagle, 86 F. 608 (7th Cir. 1898) is relevant. In that case an otherwise unrelated group of flour mills in the Minneapolis, Minnesota region, which all ground hard flour by utilizing a special process, all certified the identity of that particular type of flour by presenting the words "Minnesota Patent" along with their regular brand names, and were able to show that flour so marked with "Minnesota Patent" had built up a good reputation and large public demand, were held to be entitled to an injunction against a Chicago firm which used the words "Minnesota Patent" as parts of *brand names* for flour which was milled in Milwaukee from different wheat by a different process. The Court there recognized that the complainants—acting jointly, had no trademark rights as such—that the words "Minneapolis" and "Minnesota" were not their brand names, and were geographic terms—but nonetheless concluded that they were entitled to relief under the broad principles of unfair competition.

■ The Court in *Pillsbury, supra,* found that even in the absence of formal registration equitable rights had developed to protect what could be found to have been in the nature of a certification mark. Furthermore, this Court finds no determinative substantive distinction between certification marks and trademarks which would render the case law pertaining to creation of common law trademarks inapplicable to certification marks. Therefore, this Court concludes that rights in an unregistered certification mark can be acquired in the same manner as they can in trademarks.

■ The issue of whether Section 43(a) of the Act created a federal cause of action for false representation has been recently decided by the Fifth Circuit in Alum-A-Fold Shutter Corporation v. Folding Shutter Corporation et al, 441 F.2d 556 (1971). It has further been found that an action would lie un-

der Section 43(a) for protection of unregistered common law trademarks from false representations of origin. Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405 (6th Cir. 1963).

As to the fourth issue, inasmuch as a basic substantive similarity has been found between certification marks and trademarks, this Court finds that the scope of Section 43(a) is sufficiently broad to encompass protection of unregistered common law certification marks.

█ The Court therefore, ruling that it possesses jurisdiction to hear this action, the next question is whether plaintiff, in the present suit, has acquired a common law certification mark through adoption and use.

The Fifth Circuit recognized in American Foods v. Golden Flake, 312 F.2d 619 (5th Cir. 1963) that:

"* * * a trademark is not a right in gross or at large, nor is there property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The right to a particular mark grows out of its use and not its mere adoption.
"* * *

" 'Undoubtedly, the general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question. * * * But the reason is that purchasers have come to understand the mark as indicating the origin of the wares, so that its use by a second producer amounts to an attempt to sell his goods as those, of his competitor.' " (United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918) ) supra at 625.

"Rights in an inherently distinctive mark do not depend on any particular period of use but commerce with its first use as a mark * * * (citing) Drexel Enterprises, Inc. v. Richardson, 312 F.2d 525 (10th Cir. 1962)."

"* * * *

"Thus, for the adoption and use of a mark to be effective in establishing rights, the adoption must be in good faith, the use must be a lawful use, and the use must be bona fide commercial transaction. Promotional activities which do not amount to a 'trademark use' may, however, be sufficient to establish priority of use against another." Edward C. Vandenburgh III, Trademark Law and Procedure, Second Edition, Bobbs-Merrill Co., 1968, Sec. 2.10, pp. 54, 55.

The plaintiff's mark composed of an orange laden tree encircled on the border by the phrase "Produce of the Florida Sunshine Tree" has evolved from the original "Sunshine Tree Song" first sung by Miss Anita Bryant on radio commercials starting on April 22, 1968. These commercials and its various successors created extensive public recognition of the slogan or phrase "The Sunshine Tree" (see Hoffer Affidavit, Exhibit D, June 1970, National Consumer Survey by Drossler Research Corp.). The use of such statistical survey techniques in trademark cases to demonstrate public recognition and reservoirs of good will is a well accepted practice. Chemical Corp. of America v. Anheuser-Busch, Inc., 306 F.2d 433 (5th Cir. 1962).

In the present case a high percentage of those interviewed recognized Anita Bryant, her association with the "Sunshine Tree" song and "The Florida Sunshine Tree" and "The Sunshine Tree" being associated with orange juice from Florida.

This Court finds that plaintiff has demonstrated a significant quantum of public awareness of its "Sunshine Tree" advertising and promotional program, and public recognition of the expression "Sunshine Tree", and that the "Sunshine Tree" slogan has come to be recognized as being distinctive and has obtained a tangible quantum of good will. Allstate Insurance Co. v. Allstate Inc. Co., 307 F.Supp. 1161 (N.D.Tex.1969).

Beef/Eater Restaurants, Inc. v. James Burroughs Limited, 398 F.2d 637 (5th Cir. 1968).

Inasmuch as "Sunshine Tree", until defendant applied that name to his orange juice, was not associated with a single entity or product, the good will engendered had been directed to the general class of orange products and juice associated with plaintiff's advertising slogans and songs. Thus any proprietary right to the good will associated with "Sunshine Tree" would be owned by plaintiff for use in connection with any citrus products it desired. Plaintiff, which had created the national recognition of the words "Sunshine Tree" in connection with Florida citrus products, rather than one individual brand, had reserved to itself the right to associate with that slogan what products it chose.

Subsequently, plaintiff used both the "Sunshine. Tree" and "Florida Sunshine Tree" slogans on two proposed marks for which applications for registration were submitted to the Secretary of State's office. On August 21, 1970 a number of shipments were sent by Citrus World, Inc. which bore an ink stamp impression of the certification mark Florida Registration #11,880. That shipment was sent to Pittsburgh, Pennsylvania through interstate commerce. Also on August 21, 1970 a letter was sent by plaintiff to "All Florida Citrus Processors and Shippers" advertising that the certification mark was copyrighted and registered and could not be used without plaintiff's authorization. Although this announcement of registration was premature it was notice to Florida growers of plaintiff's claim to the certification mark. On October 8, 1970, plaintiff applied to the United States Patent Office for registration of the described mark as a certification mark belonging to plaintiff. On October 21, 1970, the Florida Citrus Commission formally promulgated Regulation 105–1.46 regulating the use and adoption by citrus growers and dealers of the Florida Sunshine Tree certification mark. Copies of this regulation were sent to all citrus processors and shippers on October 27, 1970.

On January 13, 1971, Tropicana Products, Inc., after receipt of the Citrus Commission letter of October 27, 1970 announcing the availability of the certification mark, initiated a program of use of the subject certification mark on GOLD-N-PURE brand orange juice, and sent the first shipment using that mark through interstate commerce.

■ It is required that the owner of the mark should set up the standards or conditions which must be met before another is permitted to use the certification mark and the owner should permit the use of the mark by others only when they meet those standards or conditions. Section 14(d) of the 1946 Act. Vandenburgh, *supra*, at 41. In the present litigation such express standards for the use by other persons of the plaintiff's mark were not promulgated until October 21, 1970. Therefore, technically, plaintiff did not properly use and adopt full rights in the subject certification mark until that date when all the various requirements coexisted.

Defendants contend that their rights, based initially on an October 17, 1969 shipment by Highland Food Products, defendant Real Juices, Inc.'s assignor, are superior to plaintiff's in the ownership of the words "Sunshine Tree".

In the fall of 1969 defendant John Youngblood was the president and chief executive officer of Highlands Food Products Corporation, which company had been licensed from time to time as a citrus fruit dealer by the State of Florida. In the fall of 1969 it was not so licensed. Mr. Youngblood was owner of one-third of the outstanding stock, the remaining two-thirds being divided equally between one Sabin Meyer and another unnamed individual.

On September 24, 1969, eighteen months after plaintiff placed "Sunshine Tree" radio commercials on the air, and after a demonstrated public recognition, defendant Youngblood wrote to the Florida Citrus Commission on behalf of

Highland Food Products Corporation requesting registration of the brand "Sunshine Tree" under Citrus Commission Regulation 105–1.21. The requested registration was refused on October 14, 1969. Three days later Highland Food Products made a "shipment" which, it is contended, constitutes a usage of the mark "Sunshine Tree". This shipment was made by Harry Riddling, a vice-president of Highland Food Products, under Mr. Youngblood's instructions. Mr. Riddling typed the words "Sunshine Tree" and "Highlands Food Products Corporation, Highland City, Florida" on six self-adhesive labels, and placed them on six unlabeled grapefruit juice cans he had previously received as personal samples, and mailed these cans so labeled to Sabin Meyer & Co., at Bronxville, New York. No evidence was presented at the hearing to show that this amounted to a sale involving some form of consideration.

■ This Court finds that this shipment of six (6) cans of grapefruit juice on October 17, 1969 constituted only a shipment interstate and not a shipment in interstate commerce creating rights in the name "Sunshine Tree". That single shipment was not made in interstate commerce inasmuch as, when shipped it was not dispatched as part of an established business in the product. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); furthermore, it was a "sweetheart shipment", and not an arms length business transaction. United States Plywood Corp. v. Trieb, 114 U.S.P.Q. 343 (Comm.Pat.1957); Dickerson v. Wyandotte Chemical Corp., 91 U.S.P.A. 345 (Comm.Pat.1951).

For these reasons, it is found that Highland Food Products, as assignor to defendant Real Juices, Inc., did not acquire any rights in the name "Sunshine Tree" for use as a trademark or brand name for orange juice, and therefore no rights in that name were subsequently assigned or received by Real Juices, Inc., in 1970.

Furthermore, it is a difficult proposition to accept that defendants are equitably entitled to the protection of this Court for any public good will that might be created by the isolated shipment ·of six grapefruit juice cans between two business associates. The protection of the federal trademark laws was not intended to encompass such a situation.

■■ Finally, on November 4, 1970, Real Juices, Inc. produced and shipped in interstate commerce "Sunshine Tree" brand orange juice to a location in Pennsylvania. At the April 30, 1971 hearing on the preliminary injunction defendant Youngblood testified that one reason for choosing the name "Sunshine Tree" was the expectation that plaintiff's advertising and the good will belonging to those words would contribute to the sales potential of his citrus juices under that name. In other words, it was anticipated that purchasers of Real Juices' "Sunshine Tree" juice would purchase under the mistaken assumption that the juice they were buying was the object of plaintiff's extensive commercial advertising. For this reason this Court finds that this use by defendants of "The Sunshine Tree" as a trademark or brand name was done in bad faith, knowing that the words "Sunshine Tree" belonged to other persons.

This finding is supported further by the fact that this use by defendant Real Juices, Inc. was subsequent to the Florida Citrus Commission's letter of August 21, 1970 which preceded the formal promulgation of regulations governing the mark's usage but advised citrus processors and shippers that the words "The Sunshine Tree" were copyrighted and registered and could not be used without the authorization of the Department of Citrus. Also Regulation 105–1.46 was promulgated prior to Real Juices' interstate shipment as was the Commission's letter of October 27, 1970 which accompanied a copy of the regulations. Good faith use is a requirement for gaining trademark rights. United Drug Co. v. Rectanus, *supra*. Seubert v. Santaella &

Co., 36 App.D.C. 447 (1911), Wallace & Co. v. Repetti, 266 F. 307 (2nd Cir. 1920), Western Stove Co. v. George D. Roper Corp., 82 F.Supp. 206 (D.C.Cal. 1949).

It is therefore found that the use by defendants of the trademark "Sunshine Tree" is a purposeful endeavor to falsely suggest to the public that defendants have a special relationship with the nationally recognized "Sunshine Tree" advertising program or are indeed the sponsor of that advertising. Such false representations are clearly violation of Section 43(a) of the Act, 15 U.S.C. § 1125(a). Geisel v. Poynter Products, Inc., 295 F.Supp. 331 (S.D.N.Y.1968); Heaton Distributing Co. v. Union Tank Car Co., 387 F.2d 477 (8th Cir. 1967).

■ The Court further finds, after listening to tape recordings of plaintiff's radio commercials, and viewing filmed television commercials and observing defendants' bottle caps and photographs of juice cartons and advertising signs, that defendants' use of the name "Sunshine Tree" when viewed by the public is likely to cause confusion. While plaintiff did not come forward at the hearing with evidence of any particular person or persons being actually confused, this Court finds that it is obvious that a strong likelihood of confusion exists if defendants are not enjoined from further use of the name. This Court therefore finds that defendants' use of the name "Sunshine Tree" constitutes an infringement of plaintiff's common law certification mark. As to confusion arising in a trademark case see World Carpets v. Dick Littrell's New World Carpets, 438 F.2d 482 (5th Cir. 1971); American Foods, Inc. v. Golden Flake Inc., *supra*, 312 F.2d at 623.

In view of the foregoing it is unnecessary at this stage to decide if defendants' acts are an infringement of plaintiff's Florida Registration #11,880 for its certification, as defined in Fla.Stat. Sec. 495.131(i).

Additionally, this Court finds that since 1968 plaintiff has expended in excess of thirteen million dollars in advertising and creating public recognition and good will towards the words "Sunshine Tree" and its certification mark, and that the value and effectiveness of this advertising will be impaired as well as the plaintiff's proposed plans for future use of the mark if defendants' use is not enjoined.

■ The potential customers of plaintiff and defendants are the same and so they are in direct competition; any change in the public attitude towards one will reflect on the other. If defendant is permitted to sell orange juice under the name "Sunshine Tree" it will only strengthen the misconception that defendants' product is the subject of plaintiff's advertising, which would retard attainment of plaintiff's goal of creating a certification mark, similar to the Good Housekeeping Seal, to be recognized as a "seal of approval" relating to the satisfaction of established independent standards for quality, origin and source of a product. Therefore, if defendants are not enjoined in their use of the name "Sunshine Tree" plaintiff will be likely to suffer irreparable harm in that it would diminish the effectiveness of the advertising for which millions of dollars have been spent or are to be spent and dilute the strength or uniqueness of plaintiff's certification mark.

Therefore, as to the question of whether a preliminary injunction should issue, this Court adopts the five-part test established in Carling Brewing Company, Inc. v. Philllip Morris, Inc., 277 F.Supp. 326 (N.D.Ga.1967) and finds as follows:

(1) that plaintiff will probably be successful at trial;

(2) that plaintiff is likely to suffer irreparable injury if defendant is not enjoined;

(3) that the probable injury is immediate and real and not merely speculative;

(4) that the various inconveniences and injuries to the parties have been

balanced as they would be affected by the granting or withholding of the injunction; and the balance is found to be with the plaintiff; and

(5) that the plaintiff's certification mark is valid, and worthy of protection, and is being infringed upon by defendants.

For the reasons above stated a separate order granting a preliminary injunction in this case will be entered simultaneously herewith.[2]

2. In Pillsbury-Washburn Flour Mills Co. v. Eagle, *supra*, an old English case, Reddaway v. Banham [1896] App.Cas. 199, is referred to as having been decided by the House of Lords and one sentence from the first paragraph of the Lord Chancellor's speech moving the judgment of the house in that case is cited and appears appropriate to this case: "Nobody has any right to represent his goods as the goods of somebody else."