This Opinion is a
Precedent of the TTAB

Mailed: May 27, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re St. Julian Wine Company, Inc.*

_____

Serial No. 87834973

_____

Eugene J. Rath III of Flynn Thiel PC
    for St. Julian Wine Company, Inc.

Jessie A. Maihos, Trademark Examining Attorney, Law Office 121,
    Richard F. White, Acting Managing Attorney.

_____

Before Lykos, Larkin and Johnson,
    Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

St. Julian Wine Company, Inc., ("Applicant"), a corporation located in Paw Paw,

Michigan, seeks to register on the Principal Register the standard character mark

REAL MICHIGAN (with MICHIGAN disclaimed) for "wine; hard cider" in

International Class 33 and "retail store services featuring wine and hard cider; online

store services featuring wine and hard cider" in International Class 35.[1]

---

[1] Application Serial No. 87834973, filed March 15, 2018, under Section 1(b) of the Trademark
Act, 15 U.S.C. § 1051(b), alleging a bona fide intent to use the mark in commerce.

Citations to the prosecution file refer to the USPTO's Trademark Status & Document
Retrieval ("TSDR") system and identify documents by title and date. Specific citations are to

Registration was refused under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's applied-for mark so resembles the registered geographic certification marks displayed below for "apples" in International Class A that it is likely to cause confusion or mistake or to deceive:

> Registration No. 3306594, registered October 9, 2007, on the Principal Register (with APPLES disclaimed); renewed. Color is not claimed as a feature of the mark.



> Registration No. 4760996, registered June 23, 2015, on the Principal Register (with APPLES disclaimed); renewed. The colors red and green are claimed as features of the mark.



> Registration No. 3306593, for the standard character mark MICHIGAN APPLES ... GREAT LAKES, GREAT FLAVOR, registered October 9, 2007, on the Principal Register (with APPLES disclaimed); renewed.

---

the page number in the .pdf version of the TSDR records. References to the briefs and other materials in the appeal record refer to the Board's TTABVUE docket system.

Registration No. 3848319, registered September 14, 2010,
on the Principal Register (with HONEYCRISP disclaimed).
Color is not claimed as a feature of the mark.



The Michigan Apple Committee, a quasi-governmental organization formed under Michigan law, owns the cited registrations. According to the certification statement on each registration,

> [t]he Certification mark, used by persons authorized by certifier, certifies that the goods bearing the mark consist of apples grown in the State of Michigan.

The Section 2(d) refusal applies only to the goods in International Class 33 and not to the International Class 35 services.

When the refusal was made final, Applicant requested reconsideration; the Trademark Examining Attorney maintained the partial refusal to register and denied the request for reconsideration. Thereafter, Applicant timely filed a notice of appeal, and the appeal is now fully briefed. We affirm.

I. Background – Geographic Certification Marks

There are differences between certification marks and trademarks which potentially impact a likelihood of confusion analysis between such marks. A certification mark "is a special creature created for a purpose uniquely different from that of an ordinary service mark or trademark …" *In re Fla. Citrus Comm'n*, 160 USPQ 495, 499 (TTAB 1968). Section 4 of the Trademark Act provides for the

registration of "certification marks, including indications of regional origin." 15 U.S.C. § 1054. Section 45 defines a certification mark as follows:

> The term "certification mark" means any word, name, symbol, or device, or any combination thereof--
>
> (1) used by a person other than its owner, or
>
> (2) which its owner has a bona fide intention to permit a person other than the owner to use in commerce and files an application to register on the principal register established by this [Act], to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

15 U.S.C. § 1127. The major distinctions between certification marks and trademarks are: (1) a certification mark is not used by its owner but rather by authorized users, and (2) a certification mark does not indicate commercial source or distinguish the goods or services of one person from those of another person but rather indicates that the goods or services of authorized users are certified as to a particular aspect of the goods or services. *See* 15 U.S.C. §§1054, 1127; TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 1306.01 (Oct. 2018). "[C]ertification marks indicate that goods or services provided by persons other than the mark owner adhere to specified standards set by the mark owner, whereas trademarks indicate the source of the goods or services." *In re Nat'l Ass'n of Veterinary Technicians in Am., Inc.*, 2019 USPQ2d 269108, at *15 (TTAB 2019). As further explained in TMEP Section 1306.01(b):

> The message conveyed by a certification mark is that the goods or services have been examined, tested, inspected, or in some way checked by a person who is not their producer,

using methods determined by the certifier/owner. The placing of the mark on goods, or its use in connection with services, thus constitutes a certification by someone other than the producer that the prescribed characteristics or qualifications of the certifier for those goods or services have been met.

The cited marks in this appeal are geographic certification marks, also referred to as certification marks of regional origin. *See* 15 U.S.C. § 1054 (providing for registration of "certification marks, including indications of regional origin"). Geographic certification marks are used to certify that authorized users' goods or services originate in a specific geographic region. *See, e.g., Cmty. of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 133 USPQ 633 (2d Cir. 1962) (ROQUEFORT for cheese from a municipality in France); *State of Fla., Dep't of Citrus v. Real Juices, Inc.*, 330 F. Supp. 428, 171 USPQ 66 (M.D. Fla. 1971) (SUNSHINE TREE for citrus from Florida); *Bureau Nat'l Interprofessionnel Du Cognac v. Int'l Better Drinks Corp.*, 6 USPQ2d 1610 (TTAB 1988) (COGNAC for distilled brandy from a region in France). Trademark Act Section 2(e)(2), 15 U.S.C. § 1052(e)(2), which bars registration of primarily geographically descriptive marks absent a showing of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), does not apply to geographic certification marks:

> A geographical name does not require a secondary meaning in order to qualify for registration as a certification mark. It is true that section 1054 provides that certification marks are "subject to the provisions relating to the registration of trademarks, so far as they are applicable...." But section 1052(e)(2), which prohibits registration of names primarily geographically descriptive, specifically excepts "indications of regional origin" registrable under section 1054. Therefore, a geographical name may be

> registered as a certification mark even though it is primarily geographically descriptive.

*Cmty of Roquefort*, 133 USPQ at 635. With this background in mind, we proceed to the likelihood of confusion analysis.

II. Likelihood of Confusion

Trademark Act Section 2(d) prohibits registration of a mark that so resembles a registered mark as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion, mistake, or deception. 15 U.S.C. § 1052(d). Our determination under Section 2(d) is based on an analysis of all of the probative evidence of record bearing on a likelihood of confusion. *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*DuPont*"); *see also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We must consider each *DuPont* factor for which there is evidence and argument, *In re Guild Mortg. Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019), and this principle applies with equal force to cases involving geographic certification marks.

In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944, 1945-46 (Fed. Cir. 2004); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). The classification as a certification mark "has very little effect on our determination as to

whether or not there is a likelihood of confusion." *In re Accelerate s.a.l.*, 101 USPQ2d 2047, 2049 (TTAB 2012). As we shall see below, however, there are slight differences in the likelihood of confusion analysis in cases involving geographic certification marks.

We will concentrate on the composite marks shown in Registration Nos. 3306594 and 4760996. If a likelihood of confusion is found as to these registrations, it is unnecessary to consider the other cited registrations. Conversely, if a likelihood of confusion is not found as to the marks in these registrations, we would not find it as to the marks in the other cited registrations. *See, e.g.*, *In re Max Capital Grp. Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010).

A. The Goods

We compare the goods as they are identified in the involved application and cited registrations. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018); *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014); *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002); *Octocom Sys., Inc. v. Hous. Computs. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). However, because a certification mark may not be used by the owner of the mark, but is instead used by authorized users, the analysis is based on the authorized users' goods which in this case consist of "apples grown in the State of Michigan." *See* Section 4 of the Trademark Act, 15 U.S.C. § 1054; *see also E. I. DuPont de Nemours & Co. v. Yoshida*, 393 F. Supp. 502, 185 USPQ 597, 608 (E.D.N.Y. 1975) ("proximity [of products] may

be measured against that of the certification mark user...”). For this reason, goods bearing a geographic certification mark may emanate from different sources. Hence the goods in the cited registration are not simply “apples” but rather apples grown by authorized users bearing this particular geographic certification of origin.[2] *See, e.g.*, *Motion Picture Ass'n of Am., Inc. v. Respect Sportswear, Inc.*, 83 USPQ2d 1555, 1562 (TTAB 2007) (“Thus, for purposes of our likelihood of confusion analysis, we must determine whether applicant's ‘men's and ladies' shirts, pants, ladies' dresses, shorts and jackets' are related to the ‘entertainment services rendered through the medium of motion pictures' provided by users of opposer's RATED R certification mark.”).

Applicant argues that the involved goods are distinct and that consumers are unlikely to believe that apples bearing the certification marks are associated with Applicant's wine and hard cider. Elaborating, Applicant states that “the goods of [Applicant] are products from one or more of a variety of fruits, whereas the goods of the cited certification registrations are the fruits themselves,”[3] and that “one is a fruit” whereas the other is “an adult beverage.”[4]

The Examining Attorney need not prove, and we need not find, similarity as to each product listed in the description of goods. “[I]t is sufficient for finding a likelihood of confusion if relatedness is established for any item encompassed by the

---

[2] A certification statement to indicate regional origin must be sufficiently detailed to give proper notice and must properly define the region of origin. Otherwise, a geographic certification mark could improperly be applied to goods not originating from that region and would be subject to a geographically deceptive refusal. *See* TMEP § 1306.05(b)(i) (“Certification Statement”).

[3] Applicant's Brief, p. 5; 4 TTABVUE 6.

[4] Applicant's Reply Brief, p. 1; 8 TTABVUE 3.

identification of goods within a particular class in the application." *In re Aquamar, Inc.*, 115 USPQ2d 1122, 1126 n.5 (TTAB 2015); *see also Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981). In addition, it is well established that the goods need not be identical to find likelihood of confusion; rather, they need only be related in such a way that the circumstances surrounding their marketing would result in relevant consumers mistakenly believing that the goods and services originate from or are associated with the same source. *See On-Line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *In re Int'l Tel. & Tel. Corp.*, 197 USPQ 910, 911 (TTAB 1978).

By definition, apples are a necessary component of "hard cider." [5] The record also shows that it is desirable for apples used in making hard cider to be locally sourced in order to maximize freshness.[6] Because the identification of Applicant's goods is unrestricted, we must assume that "hard cider" encompasses hard cider of all types, including hard cider made from apples grown in Michigan or hard cider originating from Michigan. *See, e.g., In re Jump Designs, LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006).[7] Since apples are a key ingredient in the production of hard cider, Applicant's hard cider may be made from Registrant's apples certified to have been grown in the

---

[5] *See* excerpt from Bold Rock Hard Cider website https://boldrock.com ("Hard Cider is apple juice that has gone through a fermentation process in which its sugars have turned into alcohol.") submitted with May 21, 2018 Office Action, pp. 41 and 60.

[6] *See* excerpt from Bold Rock Hard Cider website https://boldrock.com ("Because we source all of our apples within 35 miles of our cideries, we are able to pick and crush when fruit is at its peak freshness.") submitted with May 21, 2018 Office Action, p. 42.

[7] The Examining Attorney required a disclaimer of MICHIGAN as geographically descriptive, and Applicant did not dispute that MICHIGAN was geographically descriptive, but submitted the disclaimer.

state of Michigan. We therefore find a commercial relationship between Applicant's "hard cider" and Registrant's identified goods and that the goods are related, meaning that this *DuPont* factor weighs in favor of finding a likelihood of confusion. *Cf. Bureau Nat'l Interprofessionnel Du Cognac v. Int'l Better Drinks Corp.*, 6 USPQ2d at 1616 ("'COLAGNAC' liqueurs and 'COGNAC' brandy are very closely related products" because "applicant's identification of goods, 'liqueurs,' encompasses brandy liqueurs; [and] the product on which applicant actually uses its mark contains both brandy and cola"); *In re Accelerate s.a.l.*, 101 USPQ2d at 2051 ("applicant's use of the mark COLOMBIANO COFFEE HOUSE for 'providing of food and drink' is likely to cause confusion with the registered geographic certification mark COLOMBIAN for coffee.").

B. Comparison of the Marks

This *DuPont* factor involves an analysis of the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (citing *DuPont*, 177 USPQ at 567). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd mem.*, 777 F. App'x (Fed. Cir. 2019); *accord Krim-Ko Corp. v. Coca-Cola Bottling Co.*, 390 F.2d 728, 156 USPQ 523, 526 (CCPA 1968) ("It is sufficient if the similarity in either

form, spelling or sound alone is likely to cause confusion.").

The proper test regarding similarity "is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (internal quotation marks and citation omitted)). Further, the marks "must be considered … in light of the fallibility of memory …." *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014) (quotation omitted). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016) (citing *Spoons Rests. Inc. v. Morrison Inc.*, 23 USPQ2d 1735, 1741 (TTAB 1991)), *aff'd per curiam*, 972 F.2d 1353 (Fed. Cir. 1992)); *see also In re Binion*, 93 USPQ2d 1531, 1534 (TTAB 2009).

Our analysis cannot be predicated on dissecting the marks into their various components; that is, the decision must be based on a comparison of the entire marks, not just part of the marks. *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985); *see also Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining

likelihood of confusion.").

Special considerations apply with regard to the first *DuPont* factor and geographic certification marks. In a typical likelihood of confusion analysis involving trademarks, geographically descriptive terms are usually accorded less weight. *See* TMEP §§ 1207.01(b)(iii), 1207.01(b)(ix). However, as per Section 2(e)(2) of the Trademark Act, a registered certification mark containing a geographic designation that functions to certify regional origin is not considered geographically descriptive. 15 U.S.C. § 1052(e)(2) (barring registration of any mark that is primarily geographically descriptive of goods or services, but providing an exception for indications of regional origin). Rather, a geographic certification mark is deemed distinctive because it serves to designate and certify the particular geographic origin of the relevant goods or services. Consequently, a registered geographic certification mark should not be considered "weak" or subject to a narrower scope of protection. *See Institute Nat'l Des Appellations d'Origine v. Brown-Forman Corp.*, 47 USPQ2d 1875, 1889-91 (TTAB 1998). Thus, we consider the "Michigan" component of the phrase MICHIGAN APPLES in the involved marks as inherently distinctive because it indicates the certification of the geographic source of the apples.

Section 1306.05(g)(ii) of the TMEP provides guidance when the application is for a mark that contains a geographic designation that is not a geographic certification mark, and the cited marks are geographic certification marks:

> [T]he examining attorney should consider citing not only any prior mark with distinctive elements (e.g., suggestive, arbitrary, or fanciful wording, or distinctive design elements) that are confusingly similar to those in the

applied-for mark, but also any prior geographic certification mark containing a geographic designation that is confusingly similar to the geographic designation in the applied-for mark. Even if the geographic designation in the applied-for mark is not the dominant element, is relatively inconspicuous, or appears with a number of other elements, it may nonetheless be appropriate to cite a prior geographic certification mark that contains the same designation. By contrast, if there are no prior geographic certification marks containing the geographic designation, but there are numerous prior trademarks or service marks that contain and disclaim the designation, then a §2(d) refusal based on the fact that the respective marks share the designation is likely not appropriate.

As an example of the analysis when a prior geographic certification mark is involved, consider an applied-for mark that is used as a trademark for fresh bamboo shoots, consisting of the wording ZZZ BAMBOO in large lettering appearing above EVERGLADES in small lettering (with BAMBOO and EVERGLADES disclaimed). A potential cite might be a geographic certification mark consisting of the wording CERTIFIED EVERGLADES BAMBOO (with CERTIFIED and BAMBOO disclaimed), which certifies that live bamboo plants originate in the Everglades. Citing the prior geographic certification mark, and only that mark, may be appropriate even if there are also a few prior trademarks that contain the word EVERGLADES and are applied to bamboo products.

See, e.g., *In re Accelerate s.a.l.*, 101 USPQ2d at 2051 (applicant's mark COLOMBIANO COFFEE HOUSE for "providing of food and drink" is likely to cause confusion with the registered geographic certification mark COLOMBIAN for "coffee"); *Tea Bd. of India v. The Republic of Tea, Inc.*, 80 USPQ2d 1881 (TTAB 2006) (sustaining opposer's 2(d) claim and finding applicant's mark DARJEELING NOUVEAU for "tea" confusingly similar to opposer's registered certification mark DARJEELING & Design in International Class A). However, "if other matter in the applied-for mark changes the commercial impression of what might otherwise be a

geographic designation (e.g., GEORGE WASHINGTON FRUITS vs. WASHINGTON STATE RAISINS), then that factor would weigh against citing prior marks containing the geographic term." TMEP § 1306.05(g)(ii). We agree with the guidance in the TMEP on this point and adopt it here.

Applicant argues that the only common element between its applied-for mark REAL MICHIGAN and the cited marks is the geographic designation "Michigan." Applicant maintains that the dominant portion of its mark is the initial word REAL which serves to distinguish the marks. Applicant contends that its mark "suggests a geographical area and a product that is not artificial" whereas the cited certification marks "suggest a geographical area and a fleshy round fruit (apple or apple-flavored) product."[8]

When compared in their entireties, Applicant's standard character mark REAL MICHIGAN projects a similar connotation and commercial impression to the composite geographic certification marks in Registration Nos. 3306594 and 4760996. Considering the marks as a whole, Applicant's mark REAL MICHIGAN connotes and projects a commercial impression of "real" or "genuine"[9] goods originating in the state of Michigan. When considered in this context, REAL merely functions as an adjective modifying MICHIGAN. In the cited geographic certification marks, MICHIGAN is used as an adjective to modify the plural disclaimed noun APPLES. For this reason,

---

[8] Applicant's Brief, p. 8; 4 TTABVUE 9.

[9] Definition of "real" from THE MERRIAM-WEBSTER DICTIONARY (www.merriam-webster.com) as "not artificial, fraudulent, or illusory: genuine real gold …." Applicant's Request for Reconsideration, p. 37.

the verbal portion of the cited marks, MICHIGAN APPLES, projects the meaning that the apples originate from Michigan. Thus both Applicant's and Registrant's marks share the same connotation and commercial impression of designating goods from the state of Michigan. In addition, the stylized apple design in each cited registration, irrespective of whether or not color is claimed as a feature of the mark, serves to reinforce the generic wording APPLES in the mark. *See Herbko Int'l Inc. v. Kappa Books Inc.*, 380 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002).

While acknowledging that the MICHIGAN portion of the cited certification marks is accorded the presumption of not being geographically descriptive, Applicant also points to third-party registrations for trademarks comprised in part of the term MICHIGAN, with MICHIGAN disclaimed, for goods in International Class 31 (natural agricultural products), International Class 32 (light beverages) and International Class 33 (wine and spirits) as evidence of conceptual weakness.[10] But, as noted above, MICHIGAN in the cited geographic certification marks is inherently distinctive because it certifies the regional origin of the goods. Applicant's evidence of third-party registered trademarks incorporating MICHIGAN as a geographically descriptive term fails to diminish the strength of the cited registrations. Of the 23 third-party registrations for such trademarks, none are for hard cider and only four are for goods identified as apples or wine.[11] An additional four are for "wine-based

---

[10] *See* Registration Nos. 5424230, 5397990, 4798004, 3875167, 3723152, 2175104, 1844622, 5315128, 4758419, 4908123, 4567030, 4493740, 5018239, 3955473, 2533420, 5472574, 5296822, 5296821, 5296819, 4974944, 5018239, 2964265, 3574936, and 3712415 submitted with Applicant's May 8, 2019 Request for Reconsideration, pp. 11-35.

[11] Registration No. 5387990 on the Supplemental Register for the mark GREAT LAKES APPLES PRODUCT OF MICHIGAN, U.S.A. and design for "fresh apples"; Registration No.

drinks" but are owned by the same entity.[12] These third-party registered marks, aside from being trademarks and not certification marks, do not bear a sufficient similarity to the cited geographic certification marks. *See, e.g., Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1284-85 (Fed. Cir. 1984) ("Applicant introduced evidence of eight third-party registrations for tea which contain the word 'SPICE', five of which are shown to be in use. None of these marks has a 'SPICE (place)' format or conveys a commercial impression similar to that projected by the SPICE ISLANDS mark, and these third-party registrations are of significantly greater difference from SPICE VALLEY and SPICE ISLANDS than either of these two marks from each other."); *Palisades Pageants, Inc. v. Miss Am. Pageant*, 442 F.2d 1385, 169 USPQ 790, 793 (CCPA 1971) ("While we agree with the appellant that this does, indeed, seem to be a crowded field, we are of the opinion that appellant's mark is closer to appellee's than even the closest of the third-party registrations in that it bodily incorporates appellee's mark, merely adding an adjective to the beginning thereof which, as the board observed, 'directs attention to

---

3723152 for the mark KISSED BY THE NORTH STAR, EMBRACED BY THE GREAT LAKES. MICHIGAN GROWN and design (MICHIGAN GROWN disclaimed) for "fresh apples"; Registration No. 5018239 for the mark PIER MICHIGAN (MICHIGAN disclaimed) for "wine"; and Registration No. 5472574 for the mark END OF THE ROAD WINERY SWIRL· SIP· SWALLOW GERMFASK MICHIGAN ("WINERY" AND "GERMFASK MICHIGAN" disclaimed) for "wine."

[12] *See* Registration No. 5296822 for the mark MICHIGAN WINTERGRIA, Registration No. 5296821 for the mark MICHIGAN AUTUMNGRIA, Registration No. 5296820 for the mark MICHIGAN SPRINGRIA and Registration No. 5296819 for MICHIGAN SUMMERGRIA, all with disclaimers of MICHIGAN.

the words which follow."").

In sum, consistent with the guidance to Examining Attorneys set forth in TMEP Section 1306.05(g)(ii), we are finding similarity in this case not solely on the basis that the involved marks share the same geographic term but also on the finding that the marks as a whole convey a similar meaning and commercial impression. We acknowledge the specific differences in sound and appearance pointed out by Applicant. These differences, however, are outweighed by the similarities of the marks in connotation and commercial impression. We find this *DuPont* factor weighs in favor of finding a likelihood of confusion.

### C. Balancing the Factors

We have carefully considered all of the evidence made of record, as well as all of the arguments related thereto, which in this case was limited to the first and second *DuPont* factors. *See In re Guild Mortg. Co.*, 129 USPQ2d at 1162-63. The term MICHIGAN as it appears in the cited geographic certification marks is treated as inherently distinctive because it serves to designate and certify the particular geographic origin of the relevant goods. Because the certification statement limits Registrant's goods to "apples grown in the State of Michigan," this informs the analysis of not only the second *DuPont* factor, but the first *DuPont* factor as well. When compared in their entireties, Applicant's standard character mark REAL MICHIGAN projects a similar connotation and commercial impression to the composite geographic certification marks in Registration Nos. 3306594 and 4760996. It is likely that consumers encountering REAL MICHIGAN on hard cider will

mistakenly assume that these beverages are made from MICHIGAN APPLES branded apples, i.e. apples certified as grown in the state of Michigan, and that the Michigan Apple Committee has in some fashion authorized or endorsed Applicant's hard cider and use of its mark. *Cf. In re Accelerate s.a.l.*, 101 USPQ2d at 2051 ("Purchasers familiar with registrant's certification mark COLOMBIAN for coffee, upon encountering applicant's coffee house services offered under the very similar mark COLOMBIANO COFFEE HOUSE, are likely to believe that registrant is authorizing applicant's use of the mark, and assume that applicant's services are therefore licensed by or in some way associated with registrant.").

**Decision**: The Section 2(d) refusal is affirmed as to the International Class 33 goods. The application will proceed to publication for opposition as to the International Class 35 services.